Cleda Jean CHAPPELL,
Plaintiff-Appellant,

v.

EMCO MACHINE WORKS COMPANY,
Defendant-Appellee.

No. 77–2487.

United States Court of Appeals,
Fifth Circuit.

Sept. 6, 1979.

Robert Trenchard, Jr., Kermit, Tex., for plaintiff-appellant.

Brooks L. Harman, Odessa, Tex., for defendant-appellee.

Before WISDOM, CLARK and FAY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

On August 31, 1973, the Emco Machine Works Company discharged Cleda Jean Chappell from her position as a shop clerk, giving her two weeks' pay in lieu of notice. When, on September 18, 1973, Chappell visited the Texas Employment Commission to complain about Emco's treatment of her, one of the Commission's employees, Mr. Whitley, promised that he would promptly file a complaint on her behalf with the Equal Employment Opportunity Commission (EEOC). During the period between

September 18 and February 24, 1974, Chappell repeatedly contacted Whitley regarding the status of her EEOC complaint, and was told that the complaint had been filed. On March 1, 1974, Chappell hired an attorney, who phoned the EEOC and discovered that the EEOC had not received Chappell's complaint. Despite Whitley's assurances, the EEOC did not receive the complaint until March 5, 1974, more than five months after Chappell's initial visit to the Texas Employment Commission. The reason for the delay in the EEOC's receipt of the complaint remains a mystery.

In processing Chappell's complaint, the EEOC found that Chappell had satisfied the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and that Emco had discharged her on the basis of her sex. On July 25, 1975, the EEOC issued Chappell a "right to sue" letter.

On September 2, 1975, Chappell brought suit in federal district court, alleging that her discharge violated Title VII. Emco moved for summary judgment, contending that Chappell had not met the requirements of 42 U.S.C. § 2000e–5(e),[1] which requires that a complaint of employment discrimination be filed with the EEOC within 180 days of the alleged incident of discrimination. Chappell appeals the district court's order granting that motion. We affirm.

Chappell urges that the 180-day period allowed for filing EEOC complaints under 42 U.S.C. § 2000e–5(e) should be treated as a statute of limitations and that the run-

ning of the period should be tolled during the time that she relied on Whitley's representations. She argues that she satisfied the filing requirements of § 2000e–5(e) when she spoke with Whitley and that, in any event, the 180–day period did not begin to run until September 15, the last day she received severance pay. She also contends that this court should defer to the EEOC's determination that she had satisfied the jurisdictional prerequisites of Title VII. Emco replies that the 180-day limitations period is jurisdictional and is therefore not subject to equitable tolling. Emco also asserts that the 180-day period commenced running when she was discharged on August 31, that the filing requirement is satisfied only when the EEOC receives the complaint, and that courts should not defer to EEOC's findings regarding jurisdictional matters.

## I.

### A.

[1] Is the 180-day time period contained in § 2000e–5(e) subject to equitable delay or interruption? The answer is in the affirmative but requires close analysis of numerous precedents.

In *McArthur v. Southern Airways*, 569 F.2d 276 (5th Cir. 1978) (en banc), this court held that timely filing of a complaint with the EEOC was a jurisdictional prerequisite to bringing a Title VII action in federal court.[2] The *McArthur* plaintiffs were airline stewardesses who claimed that South-

---

1. 42 U.S.C. § 2000e–5(e) provides:
    A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred

days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

2. *But see Bethel v. Jefferson*, 191 U.S.App.D.C. 108, 118 n.64, 589 F.2d 631, 641 n.64 (1978), and *Laffey v. Northwest Airlines, Inc.*, 185 U.S. App.D.C. 322, 368, 567 F.2d 429, 475 (1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). in which the District of Columbia Circuit held that the timely filing was not a jurisdictional prerequisite and that equitable tolling principles applied.

ern Airways had discriminated against them on the basis of their sex. Even though the particular incidents of discrimination had occurred more than 180 days prior to the filing of a complaint with the EEOC, plaintiffs contended that the requirement of timely filing had been met since they were victims of "continuing" discrimination. The en banc court rejected this argument, holding that "a discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed." 569 F.2d at 277 (quoting *United Air Lines v. Evans*, 431 U.S. 553, 554, 97 S.Ct. 1885, 1887, 52 L.Ed.2d 571, 576 (1977)).

*McArthur* did not address the question whether equitable considerations could delay or interrupt the running of the 180-day period. *But see McArthur*, 569 F.2d at 279–80 (Rubin, J., dissenting). It could be argued, however, that *McArthur's* characterization of timely filing as a jurisdictional prerequisite to Title VII relief means that equity can play no part in determining whether timely filing has occurred. *See Reich v. Dow Badische Co.*, 575 F.2d 363, 372–74 (2d Cir. 1978) (Danaher, Jr., concurring), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1979). It is illogical to designate a particular fact as necessary to the court's jurisdiction, yet, in its absence, allow the court to adjudicate whether equities indicate that the jurisdictional defect should be ignored.

Supreme Court decisions regarding the consequences of the failure to comply with the provisions of Title VII, however, suggest that Title VII's § 2000e–5(e) is not a jurisdictional prerequisite in the same sense as other statutory requirements, such as the provision requiring the matter in controversy to exceed $10,000. *See Bethel, supra*, 191 U.S.App.D.C. at 118 n.64, 589 F.2d at 641 n.64; *McArthur, supra*, 569 F.2d at 280 (Rubin, J., dissenting). For example, the court has held that Title VII relief is, in certain circumstances, available to members of class actions who have not filed *any* complaint with the EEOC. These cases rely on the legislative history of Title VII. *United Airlines v. McDonald*, 432 U.S. 385, 389 n.6, 92 S.Ct. 2464, 2467 n.6, 53 L.Ed.2d 423, 429 n.6 (1977); *Franks v. Bowman Transportation Co., Inc.*, 424 U.S. 747, 771, 96 S.Ct. 1251, 1267, 47 L.Ed.2d 444, 465 (1976); *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8, 95 S.Ct. 2362, 2370 n.8, 45 L.Ed.2d 280, 294–95 n.8 (1975). On the other hand, the court has strictly applied the amount in controversy requirement to bar participation in a class action suit by any potential class member not meeting the $10,000 limit. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

In addition, both the Supreme Court and this court have, on various occasions, used equitable principles from the law concerning statutes of limitations to ameliorate the effects of Title VII provisions which are characterized as jurisdictional prerequisites.[3] In *International Union of Electrical*

---

**3.** In *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 927 (5th Cir. 1975), Judge Wisdom noted the anomaly in using limitations law to analyze jurisdictional requirements:

> [C]onceptual confusion springs from a court's describing the ninety day requirement as "jurisdictional" but proceeding on the basis of an analogy to how statutes of limitations have been construed. Statutes of limitations, designed as they are primarily to prevent stale claims, are traditionally thought to be subject to much more flexible construction than statutes which confer subject matter jurisdiction upon courts. For example, many courts hold that a party may waive the defense of statute of limitations, but virtually all courts insist that a lack of subject matter

> jurisdiction may never be waived and must be invoked by the court itself if the parties fail to raise it.

516 F.2d 927. Indicative of the inherent "conceptual confusion" recognized by Judge Wisdom, the terminology used by the Supreme Court in referring to Title VII's time periods has not been consistent. *See Bethel v. Jefferson*, 191 U.S.App.D.C. at 108, 118 n.64, 589 F.2d 631, 641 n.64 (D.C.Cir. 1978). In *United Airlines v. Evans*, 431 U.S. 553, 560, 97 S.Ct. 1885, 1890, 52 L.Ed.2d 571, 579 (1977); *International Union of Electrical Workers v. Robbins & Myers*, 429 U.S. 229, 240, 97 S.Ct. 441, 449, 50 L.Ed.2d 427, 437 (1976); and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147, 157 (1974), the

*Workers v. Robbins & Myers,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the Supreme Court addressed the question whether the statutory time period for filing complaints with the EEOC was amenable to equitable tolling. The *Robbins* plaintiffs contended that the statutory period should have been tolled during the pendency of arbitration procedures, asserting that "the policy of repose, designed to protect defendants is outweighed because the interests of justice require vindication of the plaintiffs' rights." 429 U.S. at 237, 97 S.Ct. at 447, 50 L.Ed.2d at 435–436. Noting that Title VII and union grievance procedures were independent remedies, the court rejected plaintiffs' arguments. Although the *Robbins* Court found that timely filing was a jurisdictional prerequisite to a Title VII suit, 429 U.S. at 240, 97 S.Ct. at 441, 50 L.Ed.2d at 437, the Court distinguished *Burnett v. New York Central R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), a prior decision that found tolling appropriate. In *Burnett,* plaintiff had filed his Federal Employers' Liability Act suit in an Ohio state court which had jurisdiction over the matter, but which was an improper forum under Ohio venue law. After the Ohio court had dismissed his suit, plaintiff filed a complaint in federal district court against the same parties served in the state court suit, alleging the same cause of action. The Supreme Court held that the filing of the state court action was sufficient to toll the statutory limitations period contained in the Employers' Liability Act:

> Petitioner here did not sleep on his rights but brought an action within the statutory period in the state court of competent jurisdiction. Service of process was made upon the respondent notifying him that petitioner was asserting his cause of action.

380 U.S. at 429, 85 S.Ct. at 1055, 13 L.Ed.2d at 946; *see Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The *Robbins* Court distinguished *Burnett* on its facts by finding that the *Robbins* petitioner, in filing the grievance proceedings, "was not asserting the same statutory claim in a different forum, nor giving notice to respondent of that statutory claim, but was asserting an independent claim based on a *contract* right." *Robbins, supra,* 429 U.S. at 238, 97 S.Ct. at 448, 50 L.Ed.2d at 436 (emphasis in the original). The *Robbins* Court also noted that the petitioner had not asserted that she was prevented from filing a claim with the EEOC within 90 days [4] of the discriminatory act, "indeed, it [was] conceded . . . that she could have filed it the following day, had she so wished." *Id.* at 237 n.10, 97 S.Ct. at 447 n.10, 50 L.Ed.2d at 436 n.10. Thus, though *Robbins* rejected the union's claim, it recognized that equitable considerations can, in some circumstances, interrupt the running of Title VII's period for filing complaints.

Decisions of this court have also relied on equitable principles to forestall the strict, inflexible application of Title VII's jurisdictional prerequisites. In *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975), plaintiff had not learned of the facts supporting her claim of illegal employment discrimination under Title VII until after the time period for filing a complaint with the EEOC had expired. This court held that even though the statute requires that the filing period commence to run from the date the discrimination has occurred, equitable considerations mandated that the period "not begin to run . . . until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard

Court referred to the time periods as "jurisdictional prerequisites." In *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 392 & n.11, 97 S.Ct. 2464, 2468 & n.11, 53 L.Ed.2d 423, 430–31 & n.11 (1977), and *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 371–72, 97 S.Ct. 2447, 2457, 53 L.Ed.2d 402, 414 (1977), the Court

designated Title VII's time periods as "statutes of limitations."

4. Prior to its amendment in 1972, § 2000e–5(e) required that EEOC complaints be filed within ninety days of the incident of discrimination rather than the presently permitted 180 days.

for his rights similarly situated to the plaintiff." 516 F.2d at 931. Although *McArthur's* designation of the time period as a jurisdictional prerequisite may have cast doubt on the validity of *Reeb, see McArthur,* 569 F.2d at 279–80 (Rubin, J., dissenting), we have recently indicated that the principle announced in *Reeb* is still valid. In *Bickham v. Miller,* 584 F.2d 736 (5th Cir. 1978), the question at issue was whether the running of one of Title VII's time periods should have been interrupted. The court noted that timely filing was a jurisdictional prerequisite, but reaffirmed the *Reeb* rule that commencement of the running of the period should be delayed until a "complainant learns or could be reasonably expected to learn of the discriminatory act." 584 F.2d at 738. The court then proceeded to determine that the facts did not warrant a delay in the commencement of the jurisdictional period.

One of our recent en banc decisions, *White v. Dallas Independent School District,* 581 F.2d 556 (5th Cir. 1978), also lends support to the proposition that Title VII's jurisdictional prerequisites are subject to equitable modification. The issue in *White* was whether Title VII requires the EEOC to defer to the procedures for remedying employment discrimination established by the laws of the State of Texas. Mrs. White had filed a complaint with the EEOC alleging that she was discharged from her teaching post in the Dallas Independent School District solely because of a discriminatory policy on teacher pregnancy. Although, at the time White's complaint was filed, the EEOC was litigating the issue whether Title VII required deferral to the Texas statutory remedies, the EEOC sent Mrs. White two letters informing her that "timeliness and all other requirements have been met." *Id.* at 562. This court held that Title VII, 42 U.S.C. § 2000e–5(c), required the EEOC to defer to Texas procedures, even though in Mrs. White's case the state statute of limitations had run. The court also held that the EEOC's letters had substantially misled Mrs. White and therefore the EEOC's failure to defer "should not redound to her detriment." *Id.* at 562. The court expressly stated that it did not need to decide the issue whether deferral was a jurisdictional prerequisite to Title VII relief. *Id.* at 562 & N.11. The only logical implication of the court's decision not to reach this issue is that even if the court had held deferral to be a jurisdictional prerequisite, White's failure to comply would not have barred her suit because of the equities flowing from the EEOC's misleading letters.

In reaching its decision, the *White* court relied, in part, on *Zambuto v. American Telephone & Telegraph,* 544 F.2d 1333 (5th Cir. 1977). *Zambuto* involved the proper construction to be accorded a provision in Title VII requiring that a person who has filed a complaint with the EEOC and received notice that conciliation efforts have failed and that the EEOC does not intend to file suit on his or her behalf must file an action in the United States District Court within 90 days from the date of the notice. 42 U.S.C. § 2000e–5(f)(1). Although the first notice Mrs. Zambuto received from the EEOC concerning her discrimination claim stated that her case had been administratively closed, it went on to inform her that EEOC was awaiting her request for issuance of a "Right-to-Sue letter." Almost two months later, the EEOC sent Mrs. Zambuto a second letter informing her that if she did not request a right-to-sue letter within five days, her case would be administratively closed. Mrs. Zambuto never received this letter. The district court found that the first notice started the 90-day time period running and that since Mrs. Zambuto had not filed suit within 90 days of that notice, her suit was time barred. Finding that the only notice Mrs. Zambuto received was misleading because it implied that further action was contemplated by the EEOC before the limitation period commenced, this court held that such notice was insufficient to commence the running of the 90-day period. *Id.* at 1335.

*Zambuto* did not address whether equitable considerations could interrupt the running of the limitation period once a complainant had received proper notice of the

failure of conciliation efforts and of the EEOC's decision not to sue. However, an alternative holding in a subsequent decision has read *Zambuto* to authorize the interruption of a period which has started running. *Page v. U. S. Industries, Inc.*, 556 F.2d 346, 350–51 (5th Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). The letters the EEOC sent in *Page* were slightly different from those found in *Zambuto*. The first letter the *Page* complainant received from the EEOC indicated only that conciliation had failed, but did inform the complainant, Ms. Williams, that she had the right to file suit in federal district court. The second letter the EEOC sent to Ms. Williams informed her that the Commission had decided not to sue and that she had 90 days from the receipt of the second notice to file an action in district court. Ms. Williams brought suit within 90 days of the second letter but more than 90 days after the first letter. Responding to the company's contention that the first letter provided adequate notice to commence the 90-day period to running, the court held that the first letter was insufficient notice under 42 U.S.C. § 2000e–5(f)(1) since it failed to inform Ms. Williams that the EEOC had decided not to sue. The court then, in an alternative holding, concluded that even if the first letter served as adequate notice, the contents of the second letter informing Ms. Williams of her right to sue were so misleading that Ms. Williams' cause of action was not barred, reasoning that

> Ms. Williams was entitled to rely on this seemingly authoritative statement by the agency presumed to know the most about these matters. The same equitable considerations that led us to allow Mrs. Zambuto to pursue her action convince us that we should permit Ms. Williams to continue her action, *See Zambuto, supra*, at 1336; *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 929–30 (5th Cir. 1975).

556 F.2d at 351. Thus, the alternative holding in *Page* furnishes some support for the view that the running of the 90-day period for filing suit established by 42 U.S.C. § 2000e–5(f)(1) is susceptible to interruption under principles of equitable tolling.

The legislative history of the recent amendments to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, also provides support for the principle that Title VII's jurisdictional provisions are subject to equitable modification. The ADEA states that an individual may not file an action in district court unless, within 180 days of the alleged incident of discrimination, the person gives the Secretary of Labor notice of his or her intent to sue. 29 U.S.C. § 626(d). Since this provision is virtually identical to the 180-day time period established by § 2000e–5(e), and since the ADEA and Title VII share a common purpose, congressional statements concerning the correct construction of § 626(d) are highly relevant to interpreting § 2000e–5(e). *Oscar Mayer & Co. v. Evans*, —— U.S. ——, ——, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609, —— (1979); *Bethel, supra*, 191 U.S.App.D.C. at 118–19 n.64, 589 F.2d at 641–42 n.64; *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 109 n.13 (2d Cir. 1978). In the course of discussing the amendments to the ADEA, *see* Act of April 6, 1978, Pub.L.No.95–256, 92 Stat. 190 (1978), the conference committee to which the amendments had been assigned concluded that "equitable modification for failing to file within the [180-day] time period will be available to plaintiffs under this act."[5] H.R.Rep.No.95–950, 95th Cong., 2d Sess. 7, 12, *reprinted in*, [1978] U.S.Code Cong. & Admin.News, pp. 504, 528, 534; *also see* S.Rep.No.95–493, 95th Cong., 2d Sess. 1, 12–13, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 504, 515–16.

Since the decisions of the Supreme Court and of this court have recognized that equitable considerations can, in certain circum-

---

5. The committee report also states that timely filing is not a jurisdictional prerequisite to judicial relief under the ADEA. This circuit has held that timely filing is a jurisdiction matter, but has left open the question whether the time period is subject to equitable modification. *Quina v. Owens-Corning Fiberglass Corp.*, 575 F.2d 1115 (5th Cir. 1978). *But see Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir. 1978).

stances, mitigate the demands of § 2000e–5(e) of Title VII, holdings which characterize § 2000e–5(e) as jurisdictional do not preclude equitable modification of its requirements.

### B.

Since some equitable modification of § 2000e–5(e)'s provisions is possible, are the circumstances presented by the instant case such as would justify suspending the statute's requirements? The answer is they are not.

In urging that equitable tolling is available to her, Chappell cites *Franks v. Bowman Transportation Co.,* 495 F.2d 398 (5th Cir. 1974), *rev'd in part on other grounds,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).[6] After conciliation efforts with Franks' employer failed, the EEOC issued right-to-sue letters to Franks covering two discrimination complaints which Franks had filed with the EEOC. The letter was sent to Franks' mailing address, where his nine-year-old nephew received the letter and signed the postal receipt. The nephew subsequently lost the letter and never told Franks that the letter had arrived. About a year later, Franks contacted the EEOC about the processing of his complaint and was informed that the right-to-sue letter had been issued. After Franks filed another complaint with the EEOC presenting the same allegations contained in the original complaint, the EEOC issued another right-to-sue letter. Noting that, under then current § 2000e–5, a Title VII action must be filed within 30 days of the date the complainant receives notice that conciliation efforts have failed and that the EEOC does not intend to sue, the district court held that the 30-day period began to run on the date the first letter was delivered to Franks' mailing address and that the com-

plaint was therefore time barred. This court reversed, holding that § 2000e–5 required that a person actually receive the notice before the running of the 30-day period commenced.

Chappell urges that *Franks* should govern here, quoting language from the opinion stating "that Congress did not intend to condition a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out in the statute." 495 F.2d at 404. The issue in *Franks,* however, was not tolling of a statutory period which had commenced, but rather whether the event which would start the running of the 30-day period had occurred; *i. e.,* whether *Franks* had received notice of the EEOC's decision to administratively close his case. In the case at bar, however, Chappell asserts that even though the comparable 180-day period had properly started to run, equitable consideration should interrupt the period's progress. Thus, *Franks* does not control *Chappell's* case.

Other cases discussed in Part I. A., *supra,* present situations in which equitable considerations have been applied to interrupt or delay the § 2000e–5(e) period. These cases have suspended the "jurisdictional" limitation in three distinct situations. First, the Supreme Court has upheld the tolling of the time period during the pendency of an action before a state court which had jurisdiction over the subject matter of the suit, but which was the wrong forum under state law, reasoning that the policy of repose inherent in the timely filing requirement was satisfied since the initial state court action was filed against the same parties served in the federal suit and alleged an identical cause of action. *Robbins, supra,* 429 U.S. at 238, 97 S.Ct. at 448, 50 L.Ed.2d at 436; *see Burnett, supra,* 380 U.S. at 429,

---

**6.** Chappell also relies on *Dartt v. Shell Oil Co.,* 539 F.2d 1256 (10th Cir. 1976), which held that equitable tolling was available to suspend the running of the 180-day filing requirement in the ADEA. On writ of certiorari to the Supreme Court, *Dartt* was affirmed by an equally divided court, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977), the effect of which is to deprive

*Dartt* of any precedential value in the Supreme Court or the lower courts. *Hertz v. Woodmen,* 218 U.S. 205, 213–14, 30 S.Ct. 621, 623, 54 L.Ed. 1001, 1005–1006 (1910); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir. 1978). Thus, Chappell's reliance on *Dartt* is misplaced.

85 S.Ct. at 1055, 13 L.Ed.2d at 945. Second, this court has upheld deferring the commencement of the running of the 180-day period until the claimant knew or should have known the facts which would give rise to his Title VII claim. *Bickham, supra,* 584 F.2d at 738; *Reeb, supra,* 516 F.2d at 931. The rationale underlying this suspension of the statute's requirements is that it is unfair to allow a defendant to conceal facts that support the plaintiff's cause of action and then to rely on the statute of limitations to bar the suit when a duly diligent plaintiff was unable to discover those facts. *Reeb, supra,* 516 F.2d at 930. Third, this court has indicated that equitable modification is appropriate when the EEOC misleads a complainant about the nature of his rights under Title VII, *Page, supra,* 556 F.2d 346, 350–51; *see White, supra,* 581 F.2d at 562, concluding that a complainant "is entitled to rely on . . . seemingly authoritative statement[s] by the agency presumed to know the most about these matters." *Page, supra,* 556 F.2d at 351.

The facts of this case do not fit into any of the three categories discussed above. First, Chappell did not file a lawsuit on her Title VII cause of action in any court prior to the expiration of the 180-day period. Second, she has not alleged that she was unaware of the facts supporting her Title VII claim until after the 180-day period had expired. To the contrary, she attempted to file her complaint within a month of the alleged incident of discrimination. Third, she does not contend that the EEOC misled her about her rights under Title VII. Her only contention is that she was entitled to rely on Whitley's representations that her EEOC complaint had been filed.

While none of the cases discussed in part I.A. are on all-fours with the instant case, it is closest to the cases involving misleading statements made by the EEOC. Whitley, an employee of the Texas Employment Commission, was charged with aiding parties in obtaining remedies for employment discrimination and had actually filed EEOC complaints for various persons on prior occasions. He repeatedly informed Chappell that her EEOC complaint had been filed.

We decline, however, to extend the tolling principle from the EEOC misrepresentation cases to embrace the situation presented here. Whitley was not an employee of the EEOC, and Chappell could easily have discovered whether her complaint was filed merely by writing or phoning the EEOC office. Yet, for five months, she relied on Whitley's representations, despite the fact that her own repeated inquiries obviously indicate that she knew something was awry. If we were to find that Chappell's reliance on Whitley tolled the time period, there would be no logical reason for denying tolling to a person who has relied on a lawyer or a relative or an acquaintance to file his or her complaint. A holding of this breadth would seriously undermine the policy of repose inherent in the timely filing period, a policy designed to protect employers from stale claims. *See Johnson, supra,* 421 U.S. at 467 n.14, 95 S.Ct. at 1724 n.14, 44 L.Ed.2d at 306 n.14; *Zambuto, supra,* 544 F.2d at 1335. Nor does the fact that Emco has alleged no prejudice as a result of Chappell's four-day delay in filing a complaint affect the result. The petitioner in *Robbins* raised a similar argument, which the Supreme Court rejected:

> Petitioners contend at some length that tolling would impose almost no costs . . . . But the principal answer to this contention is that Congress has already spoken with respect to what it considers acceptable when it established a 90-day limitations period, and gave no indications that it considered a "slight" delay followed by 90 days equally acceptable. In defining Title VII's jurisdictional prerequisites "with precision," . . . Congress did not leave to courts the decision as to which delays might or might not be "slight."

429 U.S. at 239–40, 97 S.Ct. at 449, 50 L.Ed.2d at 437. We therefore conclude that Chappell's reliance on Whitley's representations did not toll the running of the 180-day time period.

## II.

■ Chappell asserts that her complaint was filed, within the meaning of § 2000e–

5(e), when the employee of the Texas Employment Commission received it. This interpretation of the statute is erroneous. The statutory scheme clearly anticipates that the complaint must be filed with the EEOC. Only then is notice given to the employer and conciliation procedures commenced. *See* 42 U.S.C. § 2000e–5. Clearly, Chappell understood this. Indeed, it was the subject of her initial request to Whitley and all of her subsequent inquiries. Our decisions also have clearly held that timely filing *with the EEOC* is a jurisdictional prerequisite to Title VII relief. *McArthur, supra,* 569 F.2d at 276; *Cutliff v. Greyhound Lines, Inc.,* 558 F.2d 803, 806 (5th Cir. 1977).

■ Chappell alternatively contends that the 180-day time period did not begin running until September 15, 1973, since she was paid through that date even though the termination occurred on August 31, 1973. The district court found that the statutory period began to run on August 31, 1973, since the incident of discrimination of which Chappell complained occurred on that date. This finding is not clearly erroneous.

■ Chappell also urges that this court should defer to the EEOC's determination that she had satisfied all of Title VII's jurisdictional prerequisites. It is clear, however, that a court must make an independent determination of whether jurisdiction exists rather than deferring to the EEOC. *Cutliff,* supra, 558 F.2d at 807; *Reeb, supra,* 516 F.2d at 926.

### III.

■ Having found that Chappell failed to file a complaint with the EEOC within 180 days of the alleged incident of discrimination and that equitable delay or interruption of the 180-day period is unavailable under the circumstances of this case, we hold that Chappell's suit was time barred under 42 U.S.C. § 2000e–5(e) and that the district court properly dismissed her suit for want of jurisdiction.

AFFIRMED.

FAY, Circuit Judge, specially concurring:

I concur in parts II and III of the majority opinion and in the result reached in part I. As the trial judge in *Zambuto* and as a member of the panel in *Page,* it was my opinion that the time period contained in § 2000e–5(e) was a jurisdictional prerequisite to bringing a Title VII action in federal court. Our en banc court held just that in *McArthur.* Equitable considerations should be irrelevant but Judge Clark has done an excellent job of analyzing the opinions of the Supreme Court which create some doubt.

WISDOM, Circuit Judge, dissenting.

With his usual thoroughness, Judge Clark has carefully analyzed the question whether the 180-day period contained in § 2000e–5(e) of Title VII is subject to equitable delay or interruption. I agree with his conclusion that equity must be considered in determining whether a timely filing occurred. I went at least that far in *Reeb v. Economic Opportunity Atlanta, Inc.,* 5 Cir. 1975, 516 F.2d 924. Judge Clark has taken a long walk to the river, undressed, put on a bathing suit, tested the temperature of the water with his toe, and then decided that it was too cold for a swim. I would take the plunge.

Mrs. Chappell is the victim of a bureaucratic tangle. She filed her complaint with the Texas Employment Commission on September 18, 1973, eighteen days after she was fired. S. R. Whitley, a supervising interviewer for the Commission, stated in an affidavit that "in the regular course of business" he made "a memorandum or record . . . personally at the time of an interview with Mrs. Cleda J. Dykes [Chappell] on September 18, 1973". He continued: "These two pages of records represent an employment discrimination complaint. My records reflect that the complaint was forwarded to Equal Employment Opportunity Commission . . . on September 18, 1973 . . . [as] is customary in the usual course of business of Texas Employment Commission". The EEOC complaint, attached to Whitley's affidavit, is dated

September 18, 1973. The Texas Employment Commission records reflect that her complaint was forwarded to the Albuquerque district office of the EEOC that day.

EEOC records, however, show that the complaint *bearing the notation of the Texas Employment Commission* was received on March 5, 1974. Although we do not know where the complaint was between September 18, 1973 and March 5, 1974, we do know that Mrs. Chappell was in no way responsible for the delay in filing. The fault for the delay lies with the state agency, the EEOC district office, or the United States mails, in recent years not distinguished for efficiency.

The majority opinion acknowledges that equitable modification would be appropriate had Mrs. Chappell relied on an employee of the EEOC to file her complaint. A complainant "is entitled to rely on . . seemingly authoritative statement[s] made by the agency presumed to know the most about these matters". *Page v. U. S. Industries, Inc.,* 5 Cir. 1977, 556 F.2d 346, 351. The majority declines to apply this principle, however, in the case of seemingly authoritative statements made by the supervising interviewer of the Texas Employment Commission because, in its view, there is no logical stopping point between reliance on a state agency and reliance on a lawyer, relative, or an acquaintance to file the party's complaint. I consider that an officer or employee of a state agency may be presumed to do his duty in the regular course of business no less than an officer or employee of a federal agency.

State agencies occupy a special role in the statutory scheme of Title VII. Many of the procedural requirements of the Act reflect the judgment that *local,* more informal enforcement agencies are the preferred means of resolving employment discrimination grievances. Resort to state agencies reduces the EEOC caseload and conserves

federal resources. The Seventh Circuit has noted that "as part of the compromise which made it possible to pass the Civil Rights Act of 1964, its sponsors agreed to the inclusion of provisions which . . . require a resort to state procedures, where available, as a condition precedent to a private action in the federal courts." *Moore v. Sunbeam Corp.,* 7 Cir. 1972, 459 F.2d 811, 820–21. Indeed, the EEOC cannot act on a complaint unless it is first presented to the state agency if the agency is one empowered by the state's fair employment legislation to grant relief from the discriminatory act charged. 42 U.S.C. §§ 2000e–5(c) and 2000e–5(d). Although Mrs. Chappell was not *required* to file her complaint first with the Texas Employment Commission, since that agency is not a fair employment practice agency within the definition of § 2000e–5(c),[1] the Texas agency is charged with assisting claimants in obtaining remedies for employment discrimination and routinely handles EEOC complaints for litigants. Whitley's job was just exactly that.

In *Reeb,* we said that "the timing provisions [of the Act] will be subject to the same sort of equitable modifications that are applied to statutes of limitations, with the important additional requirement that these modifications will be applied in the interest of effectuating the broad remedial purposes of the statute." *Reeb, supra,* at 927. Modification should be applied if "doing so would further the purposes of the statute as a whole." *Id.*

It would be ironic for Mrs. Chappell to be penalized for resorting to a state forum when Title VII places great emphasis on resorting initially to state agencies to rectify unfair practices. Insistence on formalistic distinctions between the EEOC and its "agents" on the one hand and state agencies created to assist the individual in processing his grievance on the other hand is

---

1. Section 2000e–5(c) defines that agency as one established in a state or political subdivision "which has a state or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a state or local authority to grant or seek relief from such prac-

tice or to institute criminal proceedings with respect thereto. . . ." *See also* C.F.R., Chptr. XIV, 1601.12. *Cf. White v. Dallas Independent School District,* 5 Cir. 1978 en banc, 581 F.2d 556.

particularly indefensible in light of the avowed purpose of Title VII to provide a scheme whereby an unlettered layman can present his complaint without resort to a lawyer. *Cf. Love v. Pullman Co.,* 1972, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679. In this case Whitley specifically instructed Mrs. Chappell that she did not need a lawyer because the Texas agency would handle the matter for her.

Here, there is an absence of any prejudice to the defendant attributable to the delay in filing. The delay was minimal, only four days. It can even be said that in terms of the effect on the defendant of the statutory requirement of timeliness—there was no delay. March 1 was the 180th day. The law requires that the defendant be notified within ten days of the filing of a complaint; that is, 190 days from the date of the offense. Here, that would be March 11. The EEOC mailed the notice to the defendant on March 8. The defendant received the notice on March 11. Considering, therefore, notice to the defendant as integral to the ultimate purpose of the timely filing requirement, there was no delay, certainly no prejudicial delay.

The EEOC took the case on the merits, investigated, *and found discrimination.* Significantly, the EEOC itself, the agency Congress authorized to process employment discrimination complaints, considered the filing was timely. The EEOC "Determination" contains a finding of timeliness. And the district director of the EEOC stated that the "complaint was treated by my office as timely filed". The Commission found that the defendant's reasons for Mrs. Chappell's discharge were "so groundless as to warrant a conclusion that sex was the sole motivating factor for her discharge". In short, the facts cry out for justice.

Mrs. Chappell's reliance on Whitley's assurances was reasonable. To be sure, Mrs. Chappell's repeated inquiries regarding the status of her complaint "obviously indicate that she knew something was awry". But Whitley told Mrs. Chappell that the complaint had been forwarded and that the EEOC was in the process of taking action.

It was reasonable for her to suppose that the delay was attributable to the slow turning of bureaucratic wheels. Her repeated inquiries demonstrate impatience; they do not show that she slept on her rights.

Mrs. Chappell actively pursued her remedies. She filed her complaint with an official state agency set up to carry out the broad purposes of Title VII by assisting laymen in initiating complaints with the EEOC. Bureaucratic ineptitude, whether of the Texas Employment Commission or the EEOC district office, or perhaps the United States postal service, should not result in the forfeiture of her rights. I would, therefore, reverse the district court.