**Stephen FARMER, et al.,**
**Plaintiffs–Appellants**

**v.**

**D & O CONTRACTORS, INC. et**
**al., Defendants–Appellees.**

**No. 15–30297.**

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 2016.

Hiram Chester Eastland, Jr., Esq., Eastland Law Offices, P.L.L.C., Greenwood, MS, for Plaintiffs–Appellants.

Robert David Kaufman, Norman Elvin Bailey, Jr., Martin Patrick McDowell

Brunini, Grantham, Grower & Hewes, P.L.L.C., Jackson, MS, John Wayne Mumphrey, Esq., Carlos A. Zelaya, II, Mumphrey Law Firm, L.L.C., Slidell, LA, Randall Alan Smith, Sara Porter, Smith & Fawer, L.L.C., New Orleans, LA, for Defendants–Appellees.

Before KING, JOLLY, and PRADO, Circuit Judges.

PER CURIAM: *

Plaintiffs–Appellants Stephen Farmer, et al., filed a civil suit against Defendants–Appellees D & O Contractors, et al., alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). Defendants–Appellees moved to dismiss the RICO claims as time barred, which the district court treated as motions for summary judgment. The district court granted the motions for summary judgment and dismissed Plaintiffs' claims with prejudice. The district court held that Plaintiffs' claims were time barred under the statute of limitations and declined to equitably toll the statute of limitations. Plaintiffs timely appealed and argue that they are entitled to equitable tolling on their civil RICO claims. We hold that the district court did not abuse its discretion when it denied equitable tolling and AFFIRM the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of debris-removal services provided by Plaintiffs–Appellants Stephen Farmer, Farmer Enterprises, Inc., Curt C. Casey, Cross Country Recycling, L.L.C., Truck & Equipment Enterprises, and Robert Casey (collectively, Plaintiffs) in Saint Bernard Parish, Louisiana. Starting in late 2005, Plaintiffs removed debris accumulated in the wake of Hurricane Katrina and were paid, pursuant to subcontracts funded by the Federal Emergency Management Agency (FEMA), with money being disbursed by Saint Bernard Parish. Plaintiff Stephen Farmer alleges that, during this period, he was pressured by certain individuals from Saint Bernard Parish to agree to an extortionate payment arrangement, whereby he would pay "protection money" so that he could continue working on the FEMA subcontracts. Around June 2006, Farmer approached the Federal Bureau of Investigation (FBI) with these allegations, which had opened its own investigation into allegations that the government was being defrauded. Thereafter, Farmer agreed to serve as a confidential source for the FBI's investigation, providing the government with information and recording phone conversations and meetings.

During his time as a confidential source, Farmer indicated to the FBI that he intended to file a civil RICO suit regarding the alleged extortionate conduct. However, an FBI agent advised Farmer that pursuing a civil action would likely compromise the criminal investigation, and Farmer ultimately decided to delay filing suit until after the criminal investigation was complete.[1] The FBI investigation ultimately concluded in October 2010 without

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. Farmer averred that FBI Special Agent Goodson also advised him that he would have the right to file his lawsuit after the FBI investigation was completed. Agent Goodson's written affidavit states that he advised Farmer that pursing a civil action would like-

any indictments. Farmer was informed that the investigation had been completed by November 2010. In early 2011, Farmer retained counsel with the intention of filing civil RICO claims and later met with the FBI to obtain record evidence that he had collected while he was a confidential source.

On July 30, 2012, Farmer and other debris subcontractors filed suit against Defendants–Appellees D & O Contractors, Inc., John Michael O'Malley, Daniel P. Wagner, Lance Licciardi, Randy Nunez, Jeff DiFatta, and Perry M. Nicosia (collectively, Defendants)[2] in the United States District Court for the Northern District of Mississippi. In connection with Farmer's previous allegations to the FBI, Plaintiffs alleged that Defendants had extorted them for "protection money" when they cleaned up debris in Saint Bernard Parish. Accordingly, Plaintiffs asserted claims pursuant to RICO, 18 U.S.C. § 1961 et seq., and the analogous Louisiana Racketeering Act (LRA), La. Stat. Ann. § 15:1351 et seq. Defendants thereafter moved to dismiss Plaintiffs' claims, arguing that they were time barred because the federal RICO claims were not filed within the four-year statute of limitations and the state racketeering claims were not filed within the five-year limitations period.[3] After a status conference, the district court advised the parties that the motions to dismiss would be treated as motions for summary

judgment and allowed them to file additional motions.

On March 13, 2015, the district court granted Defendants' motions for summary judgment and dismissed Plaintiffs' RICO and LRA claims with prejudice as time barred. The court noted, and the parties agreed, that Plaintiffs' causes of action accrued no later than June 2006, when Farmer approached the FBI. Based on this date, the statutes of limitations on Plaintiffs' federal and state law claims had run by June 2010 and June 2011, respectively, but Plaintiffs did not file their original complaint until July 30, 2012. The district court declined to equitably toll Plaintiffs' claims. According to the court, Plaintiffs' claims did not merit equitable tolling because Plaintiffs had not been actively misled by Defendants about their claims and were not prevented in some extraordinary way from asserting these claims. In particular, the district court found that Plaintiffs had not acted diligently in preserving their RICO claims, as Plaintiffs did not determine the applicable limitations period or consult with a competent attorney while the FBI was pursuing its investigation. The court added that, even if Plaintiffs had been diligent, they failed to show that they were prevented from filing RICO claims, as Farmer had only been *advised* not to file suit by the FBI. Plaintiffs timely appealed the district

---

ly compromise the criminal investigation and makes no mention of any legal advice that Goodson proffered to Farmer. However, taking Farmer's allegation as true has no impact on our analysis.

**2.** Defendant–Appellee Perry M. Nicosia was not added as a party to the suit until Plaintiffs' First Amended Complaint, filed on December 2, 2014.

**3.** While the RICO statute does not have an explicit limitations period, the Supreme Court grafted a four-year limitations period onto

RICO claims in *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 156–57, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The LRA's five-year limitations period for civil claims is fixed by statute. *See* La. Stat. Ann. § 15:1356(H). Both limitations periods begin to run when a plaintiff has knowledge or constructive knowledge of the injury giving rise to a cause of action. *See Love v. Nat'l Med. Enter.,* 230 F.3d 765, 777 (5th Cir.2000); *Ames v. Ohle,* 97 So.3d 386, 394 (La.Ct.App.2012).

court's order granting summary judgment as to their RICO claims on April 2, 2015.

## II. STANDARD OF REVIEW

Where "the application of equitable tolling was a fact-specific, discretionary matter, the appropriate standard of review is abuse of discretion." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir.2011). In seeking the application of this remedy, "[t]he plaintiff has the burden to provide justification for equitable tolling." *Id.* We have held that a "[a] trial court abuses its discretion when it bases its decision on an erroneous assessment of the evidence." *United States v. Caldwell*, 586 F.3d 338, 341 (5th Cir.2009).

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED EQUITABLE TOLLING

The parties do not dispute that Plaintiffs' RICO claims are time barred under the applicable statute of limitations; therefore, our inquiry is limited to whether the district court abused its discretion in denying equitable tolling of Plaintiffs' claims.[4] "The doctrine of equitable tolling preserves a plaintiff's claim when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir.1995) (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)). Equitable tolling frequently operates in the background of statutes of limitations, even when not expressly mentioned. *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 27, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989) ("The running of such statutes is traditionally subject to equitable tolling.");

see also *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) ("Time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" (quoting *Hallstrom*, 493 U.S. at 27, 110 S.Ct. 304)). Consistent with this principle, civil RICO claims may also be "subject to equitable principles of tolling." *Rotella v. Wood*, 528 U.S. 549, 560, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).

We have held that "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir.1996). Similarly, we have described "at least three bases for equitable tolling" in cases involving the Equal Employment Opportunity Commission (EEOC). *Granger*, 636 F.3d at 712. While we have never suggested that these bases are exhaustive, we have repeatedly noted that "[e]quitable tolling is to be applied 'sparingly.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)); see also *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir.2011) ("Equitable tolling ... is a narrow exception ... that should be 'applied sparingly.'" (quoting *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir.2002))). And we have found "no compelling equities to justify tolling" where a plaintiff "could have filed his claim properly with even a modicum of due diligence" but failed to timely preserve his claim for litigation. *Rashidi*, 96 F.3d at 128; see also *Jaso v. Coca Cola Co.*, 435 Fed.Appx. 346, 357 (5th Cir.2011) (per curiam) (unpublished) ("[A]

---

4. We note that Plaintiffs' arguments as to equitable tolling only relate to the conduct of Plaintiff Stephen Farmer. Plaintiffs do not proffer any evidence or argument showing that Farmer's co-plaintiffs attempted to preserve their rights in a manner meriting equitable tolling.

plaintiff who 'fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.' " (quoting *Baldwin Cty. Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam))).

The district court did not abuse its discretion in denying equitable tolling because Plaintiffs failed diligently to preserve their RICO claims and were not prevented in some extraordinary way from asserting their rights. Plaintiffs conduct shows that they were not diligent in "vigorously pursu[ing] [t]his action." *Rowe v. Sullivan,* 967 F.2d 186, 192 (5th Cir.1992). Although the four-year statute of limitations began running in June 2006, Plaintiffs failed to take any action to preserve their civil RICO claims for future litigation until after the end of the limitations period. Plaintiffs failed even to ascertain the limitations period on their claims. In particular, Farmer, who had expressed his desire to file a civil suit to the FBI, did not consult an attorney until after the investigation ended. Moreover, Plaintiffs waited more than eighteen months after the investigation ended and a full two years after the limitations period ended to file their claims.

Plaintiffs contrarily argue that while equitable tolling requires diligence, this is satisfied in civil RICO claims where plaintiffs show "investigative diligence." Citing *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 194–95, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997), Plaintiffs argue that diligence exists wherever a RICO claimant tries to discover the unlawful activity that support his claims. Because Farmer went to the FBI with his suspicions regarding the extortionate conduct and assisted with the FBI's investigation, Plaintiffs argue that they have shown investigative diligence. Plaintiffs' arguments are unavailing. *Klehr* specifically dealt with how the limi-

tations period in civil RICO actions could be tolled in instances of "fraudulent concealment," where defendants engage in "affirmative, discrete acts of concealment." *Id.* at 195, 117 S.Ct. 1984. The Court held that "a plaintiff who is not reasonably diligent [could] not assert 'fraudulent concealment,' " *id.* at 194, 117 S.Ct. 1984, and explained that "reasonable diligence," as applicable to fraudulent concealment, involved "victims themselves diligently ... investigat[ing] and thereby ... uncover[ing] unlawful activity," *id.* at 195, 117 S.Ct. 1984. But Plaintiffs do not allege fraudulent concealment by Defendants, and nothing in *Klehr* suggests its reasoning extends beyond fraudulent concealment. Plaintiffs failed to show that they exercised diligence in preserving their rights, and this, by itself, was sufficient for the district court to deny equitable tolling. *See Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (denying equitable tolling without discussing a petitioner's arguments on extraordinary circumstances because petitioner "ha[d] not established the requisite diligence").

Even assuming that Plaintiffs demonstrated diligence in preserving their claims, they cannot make out any of the grounds justifying equitable tolling. Plaintiffs do not argue that they were actively misled about their rights by Defendants. And Plaintiffs fail to demonstrate that they were prevented from exercising their rights by an extraordinary circumstance. To show an extraordinary circumstance, a litigant must "show an 'external obstacl[e]' to timely filing, *i.e.,* that 'the circumstances that caused a litigant's delay must have been beyond its control.' " *Menominee Indian Tribe of Wisc. v. United States,* —— U.S. ——, 136 S.Ct. 750, 756, 193 L.Ed.2d 750 (2016) (quoting *Menominee Indian Tribe of Wisc. v. United States,* 764 F.3d 51, 58–59 (D.C.Cir.2014)). Plain-

tiffs' primarily argue that they were prevented from exercising their rights because Farmer was advised not to file suit by the FBI so as not to interrupt a pending criminal investigation. However, the FBI did not actually prevent Farmer or any other Plaintiff from filing suit. Agent Goodson advised Farmer that filing suit would have been against the FBI's interest and, according to Farmer, told him that the RICO claims could be filed after the investigation concluded. Any obstacle to suit was thus the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance. *See id.* at 756–57 (noting that the "extraordinary-circumstances prong" only "cover[ed] matters outside [a party's] control" and not any "mistaken belief").

Plaintiffs argue that their case should be analogized to a series of EEOC cases where we found extraordinary circumstances justifying tolling after plaintiffs had been misled by the EEOC as to the limitations period.[5] Plaintiffs argue that, like the EEOC plaintiffs in those cases, they were misled as to their rights in filing suit based on the faulty advice of the government. However, this line of EEOC cases is inapposite. Unlike RICO plaintiffs, plaintiffs seeking to file Title VII claims are required by statute to complete the EEOC administrative process in order to file suit. 42 U.S.C. § 2000e–5(f)(1); *see also Grynberg v. BP, P.L.C.,* 527 Fed. Appx. 278, 282 (5th Cir.2013) (per curiam) (unpublished) ("A plaintiff advancing a claim under civil RICO is not required to establish that the defendant was or will be criminally convicted under RICO."). The line of EEOC cases recognized this statutory mandate and the reliance of Title VII plaintiffs on the EEOC administrative process. *See Page,* 556 F.2d at 349 ("Initially the individual must rely on the EEOC...."). Farmer, by contrast, did not have to rely on the FBI's advice before filing suit.

Alternatively, Plaintiffs point to an out-of-circuit district court case, *Pension Fund–Mid–Jersey Trucking Indus. v. Omni Funding Grp.,* 687 F.Supp. 962 (D.N.J.1988), where the court, borrowing from the tolling provisions of the Clayton Act, found it appropriate to toll a civil RICO claim in light of a parallel criminal litigation. *Id.* at 963–64. Plaintiffs argue that *Pension Fund–Mid–Jersey Trucking* suggests that their claims should also be tolled. Even if we were to accept the holding of *Pension Fund–Mid–Jersey Trucking,* it would not aid Plaintiffs. That court held "that the Clayton Act's tolling provisions ... are applicable to civil RICO actions where parallel criminal *litigation* is involved." *Id.* at 963 (emphasis added).

---

**5.** In particular, Plaintiffs cite: *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir.1975); *Zambuto v. American Telephone & Telegraph Co.,* 544 F.2d 1333 (5th Cir.1977); *Page v. U.S. Industries, Inc.,* 556 F.2d 346 (5th Cir.1977); *White v. Dallas Independent School District,* 581 F.2d 556 (5th Cir.1978); and *Chappell v. Emco Machine Works Co.,* 601 F.2d 1295 (5th Cir.1979). However, *Reeb* involved an instance where the plaintiff had been misled by her former employer. 516 F.2d at 925–26. *Chappell* offers the closest analogue to Plaintiffs' case, as there the plaintiff contended that her time-barred claim merited tolling because she had relied on seemingly authoritative statements of a Texas employment commission employee to her detriment when filing her EEOC complaint. 601 F.2d at 1303. However, the court denied tolling, finding that the plaintiff was not entitled to rely on the state representative's misrepresentation. *Id.* And, in any event, "[the plaintiff] could easily have discovered whether her complaint was filed merely by writing or phoning the EEOC office." *Id.* It follows from *Chappell* that the seemingly authoritative statements of the FBI relied on by Farmer have no effect on the tolling of Plaintiffs' civil RICO claims.

By contrast, and assuming we were persuaded by the *Pension Fund–Mid–Jersey Trucking* case (which we need not decide), there was no parallel criminal litigation here—only a criminal investigation that failed to result in any indictments.[6]

Finally, Plaintiffs argue that the broad remedial purposes of RICO justify tolling their claims. While we have previously recognized that "filing deadline[s are] subject to equitable modification, through tolling or estoppel, where necessary to effect the remedial purposes of [a statute]," *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir.1988), we have repeatedly maintained that the remedy is "a narrow exception ... that should be 'applied sparingly,'" *Phillips*, 658 F.3d at 457 (quoting *Ramirez*, 312 F.3d at 183). Permitting tolling solely based on the remedial purposes of RICO would swallow tolling's status as a narrow exception. *See also Menominee Indian Tribe of Wisc.*, 136 S.Ct. at 757 (finding that a general statutory purpose could not justify tolling where the statute "establish[ed] a clear procedure for the resolution of disputes"). We decline to reverse the district court's denial of equitable tolling on this basis.

## IV. CONCLUSION

For the reasons herein, we AFFIRM the district court's judgment.

---

6. Plaintiffs add that the court should also consider, when assessing Plaintiffs' diligence, the *Pension Fund–Mid–Jersey Trucking* court's holding that parallel criminal litigation extends the statute of limitations by one year after the conclusion of the litigation. *Id.* at 964. Assuming without deciding that litigation and investigation have the same significance for tolling, this still does not show that Plaintiffs were diligent in preserving their rights, as they waited more than eighteen months after the conclusion of the investigation before filing their claims.