(Slip Opinion) OCTOBER TERM, 2015 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MENOMINEE INDIAN TRIBE OF WISCONSIN *v.* UNITED STATES ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 14–510. Argued December 1, 2015—Decided January 25, 2016

Pursuant to the Indian Self-Determination and Education Assistance Act (ISDA), petitioner Menominee Indian Tribe of Wisconsin contracted with the Indian Health Service (IHS) to operate what would otherwise have been a federal program and to receive an amount of money equal to what the Government would have spent on operating the program itself, including reimbursement for reasonable contract support costs. 25 U. S. C. §§450f, 450j–1(a). After other tribal entities successfully litigated complaints against the Federal Government for failing to honor its obligation to pay contract support costs, the Menominee Tribe presented its own contract support claims to the IHS in accordance with the Contract Disputes Act of 1978 (CDA), which requires contractors to present each claim to a contracting officer for decision, 41 U. S. C. §7103(a)(1). The contracting officer denied some of the Tribe's claims because they were not presented within the CDA's 6-year limitations period. See §7103(a)(4)(A).

The Tribe challenged the denials in Federal District Court, arguing that the limitations period should be tolled for the nearly two years in which a putative class action, brought by tribes with parallel complaints, was pending. As relevant here, the District Court eventually denied the Tribe's equitable-tolling claim, and the Court of Appeals affirmed, holding that no extraordinary circumstances beyond the Tribe's control caused the delay.

*Held*: Equitable tolling does not apply to the presentment of petitioner's claims. Pp. 5–9.

(a) To be entitled to equitable tolling of a statute of limitations, a litigant must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

way and prevented timely filing." *Holland* v. *Florida*, 560 U. S. 631, 649. The Tribe argues that diligence and extraordinary circumstances should be considered together as factors in a unitary test, and it faults the Court of Appeals for declining to consider the Tribe's diligence in connection with its finding that no extraordinary circumstances existed. But this Court has expressly characterized these two components as "elements," not merely factors of indeterminate or commensurable weight, *Pace* v. *DiGuglielmo*, 544 U. S. 408, 418, and has treated them as such in practice, see *Lawrence* v. *Florida*, 549 U. S. 327, 336–337. The Tribe also objects to the Court of Appeals' interpretation of the "extraordinary circumstances" prong as requiring the showing of an "external obstacle" to timely filing. This Court reaffirms that this prong is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control. Pp. 5–7.

   (b) None of the Tribe's excuses satisfy the "extraordinary circumstances" prong of the test. The Tribe had unilateral authority to present its claims in a timely manner. Its claimed obstacles, namely, a mistaken reliance on a putative class action and a belief that presentment was futile, were not outside the Tribe's control. And the significant risk and expense associated with presenting and litigating its claims are far from extraordinary. Finally, the special relationship between the United States and Indian tribes, as articulated in the ISDA, does not override clear statutory language. Pp. 7–8.

764 F. 3d 51, affirmed.

   ALITO, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 14–510

———————

## MENOMINEE INDIAN TRIBE OF WISCONSIN, PETITIONER *v.* UNITED STATES, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[January 25, 2016]

JUSTICE ALITO delivered the opinion of the Court.

Petitioner Menominee Indian Tribe of Wisconsin (Tribe) seeks equitable tolling to preserve contract claims not timely presented to a federal contracting officer. Because the Tribe cannot establish extraordinary circumstances that stood in the way of timely filing, we hold that equitable tolling does not apply.

I

Congress enacted the Indian Self-Determination and Education Assistance Act (ISDA), Pub. L. 93–638, 88 Stat. 2203, 25 U. S. C. §450 *et seq.,* in 1975 to help Indian tribes assume responsibility for aid programs that benefit their members. Under the ISDA, tribes may enter into "self-determination contracts" with federal agencies to take control of a variety of federally funded programs. §450f. A contracting tribe is eligible to receive the amount of money that the Government would have otherwise spent on the program, see §450j–1(a)(1), as well as reimbursement for reasonable "contract support costs," which include administrative and overhead costs associated with carrying out the contracted programs, §§450j–1(a)(2), (3), (5).

In 1988, Congress amended the ISDA to apply the Contract Disputes Act of 1978 (CDA), 41 U. S. C. §7101 *et seq.*, to disputes arising under the ISDA. See 25 U. S. C. §450m–1(d); Indian Self-Determination and Education Assistance Act Amendments of 1988, §206(2), 102 Stat. 2295. As part of its mandatory administrative process for resolving contract disputes, the CDA requires contractors to present "[e]ach claim" they may have to a contracting officer for decision. 41 U. S. C. §7103(a)(1). Congress later amended the CDA to include a 6-year statute of limitations for presentment of each claim. Federal Acquisition Streamlining Act of 1994, 41 U. S. C. §7103(a)(4)(A).

Under the CDA, the contracting officer's decision is generally final, unless challenged through one of the statutorily authorized routes. §7103(g). A contractor dissatisfied with the officer's decision may either take an administrative appeal to a board of contract appeals or file an action for breach of contract in the United States Court of Federal Claims. §§7104(a), (b)(1), 7105(b). Both routes then lead to the United States Court of Appeals for the Federal Circuit for any further review. 28 U. S. C. §1295(a)(3); 41 U. S. C. §7107(a)(1); see 25 U. S. C. §450m–1(d). Under the ISDA, tribal contractors have a third option. They may file a claim for money damages in federal district court, §§450m–1(a), (d), and if they lose, they may pursue an appeal in one of the regional courts of appeals, 28 U. S. C. §1291.

Tribal contractors have repeatedly complained that the Federal Government has not fully honored its obligations to pay contract support costs. Three lawsuits making such claims are relevant here.

The first was a class action filed by the Ramah Navajo Chapter alleging that the Bureau of Indian Affairs (BIA) systematically underpaid certain contract support costs. *Ramah Navajo Chapter* v. *Lujan*, No. 1:90–cv–0957 (D NM) (filed Oct. 4, 1990). In 1993, Ramah successfully

moved for certification of a nationwide class of all tribes that had contracted with the BIA under the ISDA. See Order and Memorandum Opinion in *Ramah Navajo Chapter* v. *Lujan*, No. 1:90–cv–0957 (D NM, Oct. 1, 1993), App. 35–40. The Government argued that each tribe needed to present its claims to a contracting officer before it could participate in the class. *Id.,* at 37–38. But the trial court held that tribal contractors could participate in the class without presentment, because the suit alleged systemwide flaws in the BIA's contracting scheme, not merely breaches of individual contracts. *Id.,* at 39. The Government did not appeal the certification order, and the *Ramah* class action proceeded to further litigation and settlement.

The second relevant ISDA suit raised similar claims about contract support costs but arose from contracts with the Indian Health Service (IHS). *Cherokee Nation of Okla.* v. *United States*, No. 6:99–cv–0092 (ED Okla.) (filed Mar. 5, 1999). In *Cherokee Nation*, two tribes filed a putative class action against IHS. On February 9, 2001, the District Court denied class certification without addressing whether tribes would need to present claims to join the class. *Cherokee Nation of Okla.* v. *United States*, 199 F. R. D. 357, 363–366 (ED Okla.). The two plaintiff tribes did not appeal the denial of class certification but proceeded to the merits on their own, eventually prevailing before this Court in a parallel suit. See *Cherokee Nation of Okla.* v. *Leavitt*, 543 U. S. 631 (2005).

The third relevant case is the one now before us. In this case, the Tribe presented its contract support claims (for contract years 1995 through 2004) to IHS on September 7, 2005, shortly after our *Cherokee Nation* ruling. As relevant here, the contracting officer denied the Tribe's claims based on its 1996, 1997, and 1998 contracts because, *inter alia,* those claims were barred by the CDA's 6-year statute

of limitations.[1]  The Tribe challenged the denials in the United States District Court for the District of Columbia, arguing, based on theories of class-action and equitable tolling, that the limitations period should be tolled for the 707 days that the putative *Cherokee Nation* class had been pending.  See *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538 (1974) (class-action tolling); *Holland* v. *Florida*, 560 U. S. 631 (2010) (equitable tolling).

Initially, the District Court held that the limitations period was jurisdictional and thus forbade tolling of any sort.  539 F. Supp. 2d 152, 154, and n. 2 (DDC 2008).  On appeal, the United States Court of Appeals for the District of Columbia Circuit concluded that the limitations period was not jurisdictional and thus did not necessarily bar tolling.  614 F. 3d 519, 526 (2010).  But the court held that the Tribe was ineligible for class-action tolling during the pendency of the putative *Cherokee Nation* class, because the Tribe's failure to present its claims to IHS made it "ineligible to participate in the class action at the time class certification [was] denied."  614 F. 3d, at 527 (applying *American Pipe*).  The court then remanded the case to the District Court to determine the Tribe's eligibility for equitable tolling.

On remand, the District Court concluded that the Tribe's asserted reasons for failing to present its claims within the specified time "do not, individually or collectively, amount to an extraordinary circumstance" that could warrant equitable tolling.  841 F. Supp. 2d 99, 107 (DC 2012) (internal quotation marks omitted).  This time, the Court of Appeals affirmed.  764 F. 3d 51 (CADC 2014).  It

--------

[1] Because the contract claims accrued no later than the end of each calendar-year contract, the District Court determined, the statute of limitations for the 1996, 1997, and 1998 contracts had run by January 1st of the years 2003, 2004, and 2005, respectively.  539 F. Supp. 2d 152, 154, n. 1 (DC 2008).  The Tribe does not dispute the timing of accrual before this Court.

explained that, "[t]o count as sufficiently 'extraordinary' to support equitable tolling, the circumstances that caused a litigant's delay must have been beyond its control," and "cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." *Id.*, at 58. Because none of the Tribe's proffered circumstances was beyond its control, the court held, there were no extraordinary circumstances that could merit equitable tolling.

The Court of Appeals' decision created a split with the Federal Circuit, which granted another tribal entity equitable tolling under similar circumstances. See *Arctic Slope Native Assn., Ltd.* v. *Sebelius*, 699 F. 3d 1289 (CA Fed. 2012). We granted certiorari to resolve the conflict. 576 U. S. \_\_\_ (2015).

II

The Court of Appeals denied the Tribe's request for equitable tolling by applying the test that we articulated in *Holland* v. *Florida*, 560 U. S. 631. Under *Holland*, a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.,* at 649 (internal quotation marks omitted).

The Tribe calls this formulation of the equitable tolling test overly rigid, given the doctrine's equitable nature. First, it argues that diligence and extraordinary circumstances should be considered together as two factors in a unitary test, and it faults the Court of Appeals for declining to consider the Tribe's diligence in connection with its finding that no extraordinary circumstances existed. But we have expressly characterized equitable tolling's two components as "elements," not merely factors of indeterminate or commensurable weight. *Pace* v. *DiGuglielmo*, 544 U. S. 408, 418 (2005) ("Generally, a litigant seeking

equitable tolling bears the burden of establishing two elements"). And we have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other. See, *e.g.*, *Lawrence* v. *Florida*, 549 U. S. 327, 336–337 (2007) (rejecting equitable tolling without addressing diligence because habeas petitioner fell "far short of showing 'extraordinary circumstances'"); *Pace*, *supra*, at 418 (holding, without resolving litigant's argument that he had "satisfied the extraordinary circumstance test," that, "[e]ven if we were to accept [his argument], he would not be entitled to relief because he has not established the requisite diligence").

Second, the Tribe objects to the Court of Appeals' interpretation of the "extraordinary circumstances" prong as requiring a litigant seeking tolling to show an "external obstacl[e]" to timely filing, *i.e.*, that "the circumstances that caused a litigant's delay must have been beyond its control." 764 F. 3d, at 58–59. The Tribe complains that this "external obstacle" formulation amounts to the same kind of "'overly rigid *per se* approach'" we rejected in *Holland*. Brief for Petitioner 32 (quoting 560 U. S., at 653). But in truth, the phrase "external obstacle" merely reflects our requirement that a litigant seeking tolling show "that some extraordinary circumstance *stood in his way*." *Id.*, at 649 (emphasis added; internal quotation marks omitted). This phrasing in *Holland* (and in *Pace* before that) would make little sense if equitable tolling were available when a litigant was responsible for its *own* delay. Indeed, the diligence prong already covers those affairs within the litigant's control; the extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control. We therefore reaffirm that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are

both extraordinary *and* beyond its control.[2]

## III

The Tribe offers no circumstances that meet this standard.

Its mistaken reliance on the putative *Cherokee Nation* class action was not an obstacle beyond its control.[3] As the Tribe conceded below, see 614 F. 3d, at 526–527, it could not have been a member of the putative *Cherokee Nation* class because it did not present its claims to an IHS contracting officer before class certification was denied. Before then, the Tribe had unilateral authority to present its claims and to join the putative class. Presentment was blocked not by an obstacle outside its control, but by the Tribe's mistaken belief that presentment was unneeded.

The Tribe's mistake, in essence, was its inference that the reasoning of the *Ramah* class certification decision (allowing tribes to participate—without presentment—in the class challenging underpayment of BIA contract support costs) applied to the putative *Cherokee Nation* class. This mistake was fundamentally no different from "a garden variety claim of excusable neglect," *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 96 (1990), "such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline," *Holland, supra*, at 651 (quoting *Lawrence, supra*, at 336). And it is quite different from relying on

---

[2] *Holland* v. *Florida*, 560 U. S. 631 (2010), is a habeas case, and we have never held that its equitable-tolling test necessarily applies outside the habeas context. Nevertheless, because we agree that the Tribe cannot meet *Holland*'s test, we have no occasion to decide whether an even stricter test might apply to a nonhabeas case. Nor does the Tribe argue that a more generous test than *Holland*'s should apply here.

[3] Because we conclude that the Tribe's mistake of law was not outside its control, we need not decide whether a mistake of law, however reasonable, could ever be extraordinary.

*actually binding* precedent that is subsequently reversed.[4]

The Tribe's other excuses are even less compelling. Its belief that presentment was futile was not an obstacle beyond its control but a species of the same mistake that kept it out of the putative *Cherokee Nation* class. And the fact that there may have been significant risk and expense associated with presenting and litigating its claims is far from extraordinary. As the District Court noted below, "it is common for a litigant to be confronted with significant costs to litigation, limited financial resources, an uncertain outcome based upon an uncertain legal landscape, and impending deadlines. These circumstances are not 'extraordinary.'" 841 F. Supp. 2d, at 107.

Finally, the Tribe also urges us to consider the special relationship between the United States and Indian tribes, as articulated in the ISDA. See 25 U. S. C. §450a(b) ("Congress declares its commitment to the maintenance of the Federal Government's unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole"). We do not question the "general trust relationship between the United States and the Indian tribes," but any specific obligations the Government may have under that relationship are "governed by statute rather than the common law." *United States* v. *Jicarilla Apache Nation*, 564 U. S. 162, 165 (2011). The ISDA and CDA establish a clear procedure for the resolution of disputes over ISDA contracts, with an unambiguous 6-year deadline for presentment of claims. The "general trust relationship" does not override the clear language of those statutes.[5]

───────────

[4] The Court of Appeals speculated, without deciding, that such a development might merit tolling, but like that court we have no occasion to decide the question.

[5] Because we hold that there were no extraordinary circumstances, we need not decide whether the Tribe was diligently pursuing its rights. We also need not accept the Tribe's invitation to assess preju-

## IV

For these reasons, the judgment of the United States Court of Appeals for the District of Columbia Circuit is affirmed.

*It is so ordered.*

———————

dice to the Government, because the absence of prejudice to the opposing party "is not an independent basis for invoking the doctrine [of equitable tolling] and sanctioning deviations from established procedures." *Baldwin County Welcome Center* v. *Brown*, 466 U. S. 147, 152 (1984) (*per curiam*). Rather, the absence of prejudice is "a factor to be considered in determining whether the doctrine of equitable tolling should apply *once a factor that might justify such tolling is identified.*" *Ibid.* (emphasis added).