# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-1770

———————————————

Jessica Leah Kampschroer; Cory Patrick Kampschroer,

*Plaintiffs - Appellants*,

v.

Anoka County; City of Anoka; City of Apple Valley; City of Arlington; City of Baxter; City of Belle Plaine; Beltrami County; Benton County; City of Blaine; City of Bloomington; Blue Earth County; City of Braham; City of Brooklyn Center; City of Brooklyn Park; City of Brownton; City of Burnsville; City of Cambridge; City of Cannon Falls; Carver County; Cass County; Centennial Lakes Police Department; City of Champlin; City of Chaska; City of Chisago; Chisago County; City of Columbia Heights; City of Corcoran; City of Cottage Grove; City of Crosby; Crow Wing County; City of Crystal,

*Defendants - Appellees*,

Dakota County,

*Defendant*,

City of Deephaven; City of Dundas; City of Eagan; City of Eden Prairie; City of Edina; City of Elk River; City of Fairmont; Faribault County; City of Faribault; City of Farmington; City of Foley,

*Defendants - Appellees*,

Fillmore County,

*Defendant*,

City of Forest Lake; City of Fridley; City of Glencoe; City of Golden Valley; Goodhue County; City of Goodview; Grant County; City of Hastings; Hennepin County; City of Hopkins; City of Howard Lake; Hubbard County; City of Hutchinson; City of Inver Grove Heights; City of Isanti; Isanti County; City of Jordan; Kanabec County; Lakes Area Police Department; City of Lakeville; Le Sueur County; City of Litchfield; City of Mankato; City of Maple Grove; City of Maplewood; McLeod County; City of Medina; Mille Lacs County; City of Minneapolis; City of Minnetonka; City of Montgomery; City of Moorhead; Morrison County; City of Morristown; City of Mounds View; Minneapolis Park & Recreation Board,

*Defendants - Appellees*,

Metropolitan Airports Commission,

*Defendant*,

City of New Brighton; City of New Hope; City of New Prague; City of Newport; Nicollet County; City of North Saint Paul; City of North Mankato; City of Northfield; Olmsted County; City of Owatonna; City of Prior Lake,

*Defendants - Appellees*,

Ramsey County,

*Defendant*,

City of Ramsey; Rice County; City of Richfield; City of Robbinsdale; City of Rochester,

*Defendants - Appellees*,

Rochester Motors, LLC,

*Defendant*,

-2-

City of Rosemount; City of Roseville; City of Sartell; City of Savage; Scott County; City of Shakopee; Sherburne County; City of Spring Lake Park; City of Saint Cloud,

*Defendants - Appellees*,

Saint Louis County,

*Defendant*,

City of Saint Louis Park; City of Saint Paul; City of Staples; Stearns County; Steele County; City of Stillwater; City of West Saint Paul; Wadena County; City of Waite Park; Washington County; City of Wayzata; City of White Bear Lake; Winona County; City of Woodbury; Wright County; Yellow Medicine County,

*Defendants - Appellees*,

Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-1500), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Entity Does (1-50), including cities, counties, municipalities, and other entities sited in Minnesota and federal departments and agencies; DPS Does; Metropolitan Council,

*Defendants*,

Pine County; City of Coon Rapids; Dakota Communications Center; City of Mendota Heights; City of Saint Anthony; City of Saint Francis; City of Saint Paul Park; City of Saint Peter,

*Defendants - Appellees*,

Pat McCormack, in her individual capacity as the Director of Driver and Vehicle Services at the Minnesota Department of Public Safety,

*Defendant*.

_____

-3-

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 12, 2019
Filed: August 30, 2019

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Jessica and Cory Kampschroer brought this action against a group of cities, counties, local entities, and individuals, alleging violations of the Driver's Privacy Protection Act (DPPA), 18 U.S.C. §§ 2721-2725.  After dismissing claims against some of the defendants, the district court[1] permitted limited discovery to determine whether the Kampschroers were entitled to equitable tolling on claims that had accrued outside the statutory limitations period.  The court then concluded that equitable tolling was unavailable and granted summary judgment for the remaining defendants on the time-barred claims.  The Kampschroers appeal, and we affirm.

I.

Jessica Kampschroer has worked as a news reporter for a local Minnesota television station since 2003.  Her husband Cory worked as a news anchor and reporter for a different local station from 2006 to 2010.

_____

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

In May 2008, Jessica learned about unauthorized viewing of her driving record by a state employee. Patricia McCormack, Director of the Driver and Vehicle Services Division (DVS) of the Minnesota Department of Public Safety, notified Jessica by letter dated May 29. McCormack wrote that an internal audit revealed that an employee had accessed Jessica's private information for purposes that were not work-related. McCormack apologized for the "misuse of the Driver and Vehicle Service database," and stated that "[t]he department has taken the appropriate and allowable disciplinary actions necessary to address this matter with the employee." The letter's heading listed "Driver and Vehicle Services" under a banner with the words "Minnesota Department of Public Safety." McCormack signed the letter as Director of "Driver and Vehicle Services." Jessica understood the letter to mean that DVS had audited use of the database by all employees of the Department of Public Safety, which she thought included all city and county employees involved in public safety.

Jessica called McCormack soon after receiving the letter. For privacy reasons, McCormack could not give Jessica many details about the employee who had accessed her information improperly. McCormack did say that the employee was undergoing a disciplinary process and that the employee had acted out of "basic curiosity." Jessica and McCormack both testified that McCormack may have told Jessica that the improper access at issue was an "isolated incident." Jessica continued to believe that her information had been accessed improperly only once. Cory saw the letter, discussed it with Jessica, and may have been present during Jessica's phone call with McCormack.

On June 11, 2008, Jessica's bank notified her that changes had been made to the personal profile section of her account. Concerned by the proximity of the bank notice to the DVS letter, Jessica spoke with McCormack again on the phone. McCormack reiterated that she could not disclose personal information about the employee, but assured Jessica that there was no reason to be concerned. The changes

-5-

to Jessica's bank account turned out to be unrelated to the improper use of the DVS database.

On June 15, 2008, Jessica searched for and printed out a news script from earlier in the year that reported on unauthorized viewing of driver's license information. The script said that two customer service specialists for the Department of Public Safety were accused of accessing the personal information of about 400 people. On June 19, an anonymous source sent a letter to an attorney at Jessica's television station suggesting that the station should investigate unlawful access to driver's license data by the Department of Public Safety. The attorney provided the letter to Jessica.

Over four years later, in January 2013, the Minnesota Department of Natural Resources sent a letter notifying Jessica that one of its employees had accessed Jessica's motor vehicle records without authorization. Jessica and Cory then each requested a full audit of their motor vehicle records. The audits suggested that the Kampschroers' private information had been accessed more than 1,400 times between 2003 and 2013.

The Kampschroers sued numerous cities, counties, local entities, and individuals on September 15, 2013. In their second amended complaint, the Kampschroers alleged, *inter alia*, that the defendants violated the DPPA by knowingly obtaining, disclosing, or using the Kampschroers' personal information for impermissible purposes. *See* 18 U.S.C. §§ 2721, 2724(a). The district court dismissed claims brought against certain defendants for failure to state a claim. Applying the four-year statute of limitations of 28 U.S.C. § 1658(a), the court reasoned that other claims arising from violations that occurred before September 15, 2009, would normally be time-barred, because the statute begins to run when a violation occurs. *See McDonough v. Anoka County*, 799 F.3d 931, 943 (8th Cir. 2015). But the court concluded that limited discovery was warranted to address

-6-

whether the Kampschroers were entitled to equitable tolling on account of McCormack's representations in May 2008.

After discovery, the district court granted the remaining defendants' motions for summary judgment on claims for violations that occurred before September 15, 2009. The court determined that Jessica's confusion over the scope of the May 2008 DVS audit was insufficient to warrant equitable tolling. The court also reasoned that Jessica was in a better position to discover DPPA violations than most plaintiffs because she had encountered evidence of unauthorized DVS database access at multiple times in 2008. Because Cory relied on the same confusion over the DVS audit, the court concluded that he was not entitled to equitable tolling either. The Kampschroers appeal; we consider the grant of summary judgment *de novo*, viewing the facts in the light most favorable to the Kampschroers as the non-moving parties.

II.

Equitable tolling is an exception to the general rule of enforcing statutes of limitation, and it is therefore appropriate only in extraordinary circumstances. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The parties embrace that two-part test from the habeas corpus context, so we apply it without deciding whether a more stringent test might otherwise apply in a nonhabeas action. *Cf. Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 n.2 (2016).

The Kampschroers rest their argument for extraordinary circumstances on McCormack's representations about the DVS audit. They acknowledge that the statute of limitations for a DPPA claim begins to run when the violation occurs, not when a plaintiff discovers the violation. *See McDonough*, 799 F.3d at 943. But in

the Kampschroers' view, a reasonable person would have interpreted McCormack's letter and her two subsequent phone conversations with Jessica to communicate that the audit covered *all* uses of the DVS database, not just uses by DVS employees. That interpretation, they explain, lulled both of them into inaction until Jessica received notice from the Department of Natural Resources in 2013.

McCormack's communications do not constitute extraordinary circumstances. The best reading of McCormack's letter is that the DVS audit examined uses of the database only by DVS employees. The letter stated that "Driver and Vehicle Services" had conducted "an internal audit" that revealed an unauthorized viewing of Jessica's driving record by "an employee." McCormack signed the letter as the Director of "Driver and Vehicle Services," and stated that "we . . . will continue to monitor employee use." The letter's heading listed "Driver and Vehicle Services" above the return address and contact information.

The top of the letter did have a banner with the words "Minnesota Department of Public Safety," but a reasonable person would not assume that the Minnesota Department of Public Safety includes the entirety of state and local government in Minnesota. Even a letter referring to all Department employees would not constitute an exhaustive statement about unauthorized viewing of Jessica's information. The letter, moreover, said only that "[t]he department" had taken appropriate "disciplinary actions." That the Department is responsible for discipline of an employee within one of its divisions does not convey to a reasonable person that the DVS audit extended to all Department employees.

McCormack's conversations with Jessica over the phone were consistent with the initial letter. Jessica's notes from the first phone call reflect that McCormack said the employee was undergoing a disciplinary process, and the notes say nothing about the scope of the DVS audit. The Kampschroers make much of the point that McCormack may have said that the improper access addressed by the letter was an

"isolated incident." But without evidence that McCormack purported to speak about state and local government beyond the division that she headed, the "isolated incident" statement is best understood to mean that there was only one improper access of Jessica's information by a DVS employee. The same goes for McCormack's assurances in the second phone call that the unauthorized access was a one-time incident and was nothing to be concerned about. Since a plaintiff's "mere misunderstanding" of accurate information is not an extraordinary circumstance, neither of the Kampschroers is entitled to equitable tolling. *Miller v. Runyon*, 32 F.3d 386, 390 (8th Cir. 1994).

Even if McCormack's representations were ambiguous as to the scope of the DVS audit, they would still not justify equitable tolling. To warrant equitable tolling under the test from *Pace*, the circumstances that caused a party's delay must be "both extraordinary *and* beyond its control." *Menominee Indian Tribe*, 136 S. Ct. at 756. A reasonable person in the Kampschroers' position would not rely on ambiguous information to conclude that no other DPPA violations had ever occurred. Nothing kept the Kampschroers from seeking clarification about the scope of the DVS audit. Jessica could have inquired about the audit when she spoke with McCormack on two separate occasions. Jessica had even more reason to seek clarification after she received the anonymous letter and read the news script stating that Department of Public Safety employees had improperly accessed personal information. The circumstances here were neither extraordinary nor beyond the control of the Kampschroers.

The Kampschroers' remaining arguments are unavailing. They contend that the district court erroneously required a showing that McCormack intended to deceive the Kampschroers, and that there are genuine disputes of fact as to McCormack's intent. We need not address McCormack's intent, because her representations were not misleading. Insofar as the district court may have relied on a conclusion about McCormack's intent, it was unnecessary to the decision. The Kampschroers also

argue that the district court erred by concluding that Jessica "engaged in her own investigation" during 2008. But however Jessica's actions are characterized, it is undisputed that she read the news script and received the anonymous letter about misuse of the database. Those facts weigh against equitable tolling whether or not she pursued an investigation.

\* \* \*

The Kampschroers are not entitled to equitable tolling because no extraordinary circumstance prevented them from pursuing their rights. Their claims alleging violations of the DPPA that occurred before September 15, 2009, are therefore untimely. The judgment of the district court is affirmed.

_____