ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Globe Trailer Manufacturing, Inc. | ) ASBCA No. 62594 |
| | ) |
| Under Contract No. W56HZV-11-D-0204 | ) |

APPEARANCE FOR THE APPELLANT:     Rodney Stieger, Esq.
                                    Stinson LLP
                                    Denver, CO

APPEARANCES FOR THE GOVERNMENT:   Arthur M. Taylor, Esq.
                                    DCMA Chief Trial Attorney
                                    Michael T. Patterson, Esq.
                                    Trial Attorney
                                    Defense Contract Management Agency
                                    Chantilly, VA

OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Pending before the Board is the "Government's Motion for Summary Judgment to Deny Appellant's Claim as Untimely Under the Contract Disputes Act's Statute of Limitations" filed by the Defense Contract Management Agency (DCMA or government). In 2011, the government awarded a requirements contract for semitrailers to appellant, Globe Trailer Manufacturing, Inc. (Globe). Globe asserts that the government required constructive changes to the contract. In March 2014, after Globe failed to pass first article testing, the government terminated the contract for convenience.

In November 2014, Globe submitted its termination settlement proposal (TSP I) which did not include a claim for constructive change costs. In October 2016, the termination contracting officer issued a final decision finding partial merit and awarding Globe $987,345.76 out of a claimed amount of $7,233,387.89. Globe timely appealed to the Board, where the matter was docketed as ASBCA No. 60979. While that appeal was pending, in June 2017, Globe filed a revised termination settlement proposal (TSP II) seeking $21,003,162.54. Significantly, the TSP II asserted amounts due for the termination settlement and the alleged constructive changes in a combined claim, without asserting a sum-certain dollar amount for the alleged constructive changes. Following settlement discussions between the parties, in July 2019, the Board issued its decision on the parties' cross-motions for summary judgment regarding the proper calculation of a termination settlement for a commercial items contract requiring first item testing. Relevant to this appeal, the decision held that Globe's constructive change claims were not properly before the Board because they had not been presented to the contracting officer in TSP I.

Globe and the government again entered into settlement discussions, and in June 2020, Globe provided the government with additional calculations and supporting documentation regarding its constructive change claims, which it characterized as a supplement to its TSP II (TSP II Supplement). After the government informed Globe that it did not believe Globe's submission was a valid claim, and would not issue a final decision, Globe appealed to the Board on the basis of a deemed denial. The Board docketed this appeal as ASBCA No. 62594. In January 2021, the Board issued its decision denying the government's motion to dismiss for lack of subject matter jurisdiction, holding that Globe's TSP II was not a valid CDA claim because it did not present a sum certain, but that the TSP II Supplement was a valid claim. The government now moves for summary judgment, asserting that the TSP II Supplement was submitted more than six years after claim accrual. Globe opposes the government's motion, alleging that its claim did not accrue until the parties' settlement discussions reached an impasse; because equitable tolling precludes the government's motion; and that the government's motion should be denied because discovery is not complete. For the reasons stated below, we grant the government's motion, enter summary judgment in favor of the government, and deny Globe's appeal related to the alleged constructive changes.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

The Board previously issued two decisions related to this appeal. *Globe Trailer Manufacturing, Inc.* ASBCA No. 60979, 19-1 BCA ¶ 37,392; and *Globe Trailer Manufacturing, Inc.*, ASBCA No. 62594, 21-1 BCA ¶ 37,795. Familiarity with those decisions is assumed, and only facts relevant to this decision are presented here.

I. *The Contract*

On September 21, 2011, the United States Army awarded Contract No. W56HZV-11-D-0204 and Delivery Order 0001 to Globe (R4, tab 2 at G-312, tab 3 at G-399). The contract was a five-year requirements contract for M870A4 low bed semitrailers and related deliverables (R4, tab 1 at G-197-98, tab 2 at G-313-31). The M870A4 is a trailer intended for military use on diverse surfaces and climates. The contract required successful first article testing before the manufacture of production quantities could begin (*id*. at G-377). The contract incorporated by reference the clauses at Federal Acquisition Regulation (FAR) 52.243-1, CHANGES – FIXED PRICE (AUG 1987) (*id*. at G-375) and Defense Federal Acquisition Regulation Supplement (DFARS) clause 252.243-7002, REQUESTS FOR EQUITABLE ADJUSTMENT (MAR 1998) (*id*. at G-376). The contract also incorporated by reference FAR 52.233-1, DISPUTES (JULY 2002) (*id*. at G-375).

*II.  Contract Administration Relevant To Globe's Alleged Constructive Changes*

Globe asserts constructive changes relating to 1) a change in the gross vehicle weight; 2) a requirement to build trailer deck extensions outside the payload area; 3) designating defective electrical specifications; 4) requiring a trailer attachment shackle for the loaded prime mover; 5) requiring a quality assurance plan exceeding contractual requirements; 6) "recommending" that Globe provide an additional trailer and additional testing; and 7) other miscellaneous changes (*Globe Trailer*, 21-1 BCA ¶ 37,795 at 183,496).  We briefly address contractual events relevant to the accrual of Globe's constructive change allegations.

On January 10, 2012, the U.S. Army Procurement Contracting Officer (PCO) sent Globe a letter stating that the government intended to revise the contract specifications by requiring Globe to raise the trailer deck height and change its proposed trailer tires (R4, tab 4 at G-404).  On January 31, 2012, Globe submitted Engineering Change Proposal (ECP) GTM870A4ECP001 (R4, tab 5 at G-406-07).  The ECP proposed various changes to the trailer (*id*. at G-408) resulting in a change in the weight of the trailer from 19,259 lbs. to 20,100 lbs. (*id.* at G-407).  The parties executed bilateral modification No. P00001 on April 13, 2012 incorporating ECP GTM870A4ECP001 and its design changes to the test and production vehicles into the contract, and adjusting contract pricing (R4, tab 7 at G-426-27).

On May 1, 2012, the PCO issued a letter to Globe stating that the government intended to revise the requirement for the shakedown test to be performed on an initial production lot trailer by requiring Globe to deliver an unpainted trailer for the shakedown test.  The letter requested that Globe "provide a written concurrence affirming the above changes will have no cost or schedule impact to the contract" and requested that Globe submit a proposal for evaluation before incurring any additional costs (R4, tab 10).  Globe did not request a cost increase to the contract as a result of this change.

On July 30, 2012, Globe submitted a shakedown test report to the Army noting a trailer curb weight of 21,885 pounds (R4, tab 11 at G-475).  On August 14, 2012, the Army conducted a shakedown test review, noting that the trailer was overweight (R4, tab 13 at G-574).  In a letter dated August 21, 2012 to the PCO, Globe requested that the trailer's curb weight be increased in light of the past and anticipated engineering changes to between 21,600 and 23,000 pounds (R4, tab 14 at G-582).  In a letter dated September 21, 2012 to Globe, the PCO stated that "any increase over the 20,100 pound Trailer weight approved via ECP GTM870A4ECP001 on 13 Apr 2012 is unacceptable" (R4, tab 16 at G-585).

Globe's December 21, 2012 report on its Contractor Corrective Action Vehicle Test (CCAVT) conducted from December 13, 2012 to December 19, 2012 stated that Globe provided a trailer for testing weighing 19,960 pounds (R4, tab 18 at G-593).  The parties conducted testing on the trailers from January 7, 2013 to January 17, 2013 at

3

Globe's facility in Bradenton, Florida (First Production Verification Inspection (FPVI) #1). Several critical hardware problems arose that directly impacted the trailer configuration, and the government disapproved of the FPVI (R4, tab 19).

In a letter to Globe dated February 20, 2013, the PCO stated that the government was waiving the deck width requirement of no more than two feet of spacing between each bracket in the wheel well areas for the FPVI only. The PCO further explained that if current support with greater than two feet of spacing passes Production Verification Testing (PVT), then the government would also waive the requirement for production. (R4, tab 21)

Globe conducted a second FPVI (FPVI #2) between February 25, 2013 and March 6, 2013, and its final report, dated April 2, 2013, stated that the trailer tested is "production representative" and "meets the requirements established by ATPD 2395C" (R4, tab 23 at G-604-05). On April 18, 2013, the Army notified Globe that it had determined Globe "has met all of the requirements for FPVI and is ready to progress to Production Verification Testing (PVT)" (R4, tab 24 at G-664).

The parties executed Modification No. P00004 to the contract on May 3, 2013 (R4, tab 25 at G-666). The modification funded CLIN 0003AC for $317,800 to provide one test service representative at Aberdeen Test Center (ATC) and one test service representative at Yuma Proving Ground Test Center (YPG) to support training and PVT for a period of eight months at ATC and six months at YPG (*id*. at G-672).

Globe identified a problem with the trailer shackle in its Failure Analysis Corrective Action Report (FACAR), dated May 29, 2013 (R4, tab 26 at G-697). The report indicated that Globe had already "designed a new clevis which will work to properly couple the prime movers with the M870A4" (*id*.), and that Globe load tested the new clevis and delivered the clevises to test sites the week ending May 24, 2013 (*id*. at G-698). The clevis was independently load tested and results received on May 28, 2013 (*id*.). The Army halted the PVT in June 2013 due to a deformation in the cross members designed to reduce trailer weight (R4, tab 27). In July 2013, Globe provided a "M870A4 Main Deck Cross-Member Deformation Analysis" report (R4, tab 29).

Globe's FACAR, dated June 25, 2013, identified a deficiency with the M870A4 trailer connection pin assignments for the electrical system (R4, tab 28 at G-732). The FACAR proposed a corrective action plan addressing the wiring problem (*id*. at G-732-34). On September 9, 2013, the government sent an email to Globe explaining why Globe's proposed wiring solution was not going to work and provided history related to the trailer wiring (R4, tab 31). In a letter to the PCO dated September 23, 2013, Globe verified that it would "perform limited testing of trailer PVT Phase II-I at Aberdeen Proving Grounds," "incur all shipping costs," and "incur the cost of providing test site support representatives" (R4, tab 32 at G-860).

In a letter dated January 6, 2014, Globe requested that the government expand the waiver regarding the bracket spacing for the deck width extensions by removing the wording "in the wheel well areas" (R4, tab 38). Globe further noted that the current number of brackets operated satisfactorily during loading of the largest piece of equipment during PVT Phase I (*id.*). In a letter dated January 15, 2014, the government denied Globe's request to expand the waiver for the bracket spacing for the deck width extensions because Globe did not identify the areas of the trailer for which it wanted the spacing waiver extended, nor did Globe specify what the bracket spacing would be (R4, tab 39).

On March 11, 2014, the U.S. Army terminated the Contract for convenience of the Government stating such action was taken pursuant to the FAR 52.212-4(l) termination for convenience clause for commercial item contracts (R4, tab 41). Globe ceased performing work on the contract.

### III. *Globe's Termination Settlement Proposals And The Parties' Settlement Negotiations*

On November 12, 2014, Globe submitted its TSP I using the Standard Form 1435 (inventory method), at the direction of the contracting officer, in the amount of $7,233,387.89 (R4, tab 48). The TSP did not include any amount for constructive change costs. Nearly two years later, on October 7, 2016, the Termination Contracting Officer (TCO) issued a final decision awarding Globe $977,345.76 (R4, tab 49 at G-1041). On December 29, 2016, Globe appealed the TCO's final decision on its TSP I to the Board. The Board docketed the appeal as ASBCA No. 60979. In February 2017, the parties jointly requested that Globe be permitted to submit a revised TSP calculated as a commercial item settlement (mot. Feb. 24, 2017). Following this request, Globe asserts that DCMA counsel contacted Globe about settling Globe's appeal using current fiscal year funds (compl. ¶ 57).[1] The parties continued settlement negotiations, off and on, through June 2020.

On June 30, 2017, Globe submitted its TSP II alleging entitlement to $21,003,162.54 (R4, tab 50). In this revised TSP, Globe asserted entitlement to additional money under both the commercial items and standard termination clauses (*id.* at G-1048). Moreover, Globe included a discussion of the constructive changes but never quantified its claimed entitlement from these alleged changes (*id.* at G-1082-89); *Globe Trailer*, 21-1 BCA ¶ 37,795 at 183,499. Rather, Globe's TSP asserted claimed costs for all work performed without breaking-out the cost of the asserted extra-contractual

---

[1] Globe has not supported this proposed finding of fact with a declaration. We cite Globe's assertions to provide context, but, even assuming the truth of the assertion, we do not find it to be material to the resolution of the appeal.

5

constructive changes.  *Globe Trailer*, 21-1 BCA ¶ 37,795 at 183,496.[2]  The TCO did not issue a final decision on Globe's TSP II.

The parties filed cross-motions for summary judgment in ASBCA No. 60979 regarding the proper interpretation of the termination settlement provision for commercial item contracts when the contract also contained the First Article Approval clause at FAR 52.209-4.  On July 10, 2019, the Board issued its decision on the parties' cross-motions.  In our decision, we noted that "[t]he government has not moved to dismiss Globe's constructive change claims on the basis of lack of jurisdiction . . . we leave open the question of whether something in the record could support jurisdiction for Globe's constructive change claims."  *Globe Trailer*, 19-1 BCA ¶ 37,392 at 181,786 n.6. Following the Board's decision, the parties resumed settlement negotiations.

On February 4, 2020, Globe submitted its "Position Statement for Settlement Discussion concerning Constructive Changes Contract No. W56HZV-11-D-0204" (R4, tab 51).  The letter includes a section entitled "Legal Analysis and Damages" describing six alleged constructive changes to the contract by the Army (*id*. at G-1166-70).  However, the letter did not assert a dollar value for the asserted constructive changes.

By email on June 11, 2020, Globe provided supplemental materials related to the asserted constructive changes, and requested a contracting officer's final decision (R4, tabs 52-54).  Among these materials, Globe attached an excel spreadsheet which asserted constructive change damages of $4,565,642.58 (R4, tab 53 at G-1273).  In a second email the same day, Globe provided a certification dated June 9, 2020 and signed by Globe President Jeffery K. Walters, Sr. (R4, tab 55 at G-1277).

By email on June 25, 2020, the DCMA trial attorney informed Globe that the TCO would not be issuing a final decision since DCMA did not believe that Globe had submitted a properly certified claim (R4, tab 56).  On June 29, 2020, Globe appealed to the Board alleging a deemed denial its TSP II Supplement claim.  Specifically, Globe stated that it was appealing the "deemed denial of its Certified Claim for constructive changes" and that the "amount in dispute is $4,565,642.58" (Notice of Appeal, Jun. 29, 2020).  On July 2, 2020, the Board docketed the appeal as ASBCA No. 62594.  On July 31, 2020, the government filed a motion to dismiss Globe's appeal for lack of subject matter jurisdiction.  On January 28, 2021, we denied the motion to dismiss, holding that Globe's June 2017 TSP II was not a valid claim, because it did not contain a

---

[2] Globe provided a breakdown of its costs, for example providing detail on direct labor costs; however, the direct labor was for all work performed without breaking out the work performed pursuant to the contract from the work performed for the allegedly extra-contractual constructive changes (R4, tab 50 at G-1097).  We see no way to break-out the alleged constructive change costs, and Globe has not proposed a way to perform the calculation.

sum certain for the constructive change claims, but that Globe's June 2020 TSP II Supplement was a valid claim. *Globe Trailer*, 21-1 BCA ¶ 37,795 at 183,498-500.

DECISION

### I.     *Standard Of Review*

"We will grant summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984). "A genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993) (citation omitted).

### II.     *The Parties' Settlement Negotiations Did Not Delay Claim Accrual*

Globe's primary argument is that its constructive change claim is timely because its cause of action did not accrue until there was an impasse in settlement negotiations. Here, Globe attempts to combine its constructive change claim with its termination for convenience claim to assert what it attempts to characterize as a single cause of action, that did not accrue until the later of the accrual dates – that is the accrual for its termination settlement proposal (app. resp. at 8-11). While Globe is correct that a termination settlement proposal claim does not accrue until the parties reach an impasse in negotiations (*see, e.g., Thorpe See-Op Corp.*, ASBCA Nos. 58960, 58961, 15-1 BCA ¶ 35,833 at 175,246), Globe's error is in attempting to bring its constructive change claims within the scope of the termination settlement. Globe's notice of appeal specifically stated that it was appealing the deemed denial of its constructive change claim in the amount of $4,565,642.58. Globe's termination settlement claim is the subject of the related appeal ASBCA No. 60979.

Globe is alleging that the government constructively changed its contract. The Changes clause, FAR 52.243-1(b) requires that the government make an equitable adjustment to the contract when the government makes a change to the contract that

7

causes an increase or decrease in the cost or time required for performance. Additionally, the FAR provides:

> *Accrual of a claim* means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred.

FAR 33.201. As detailed in the statement of facts above, the events fixing liability for Globe's constructive change claims occurred during the first article testing, generally in 2012 and 2013. As the government notes, *at the latest*, the claims must have accrued at the termination for convenience on March 11, 2014. On that date, Globe's performance of the contract ended, and Globe would have known or should have known all facts relevant to a constructive change claim.

Here, Globe did not submit a valid CDA claim until its TSP II Supplement in June 2020. *Globe Trailer*, 21-1 BCA ¶ 37,795 at 183,499-500. As we noted in our prior decision, Globe's TSP II failed to include a sum certain for its constructive change claims and, and thus, was not a valid CDA claim. *Id.* at 183,499.[3] As noted above, Globe's constructive change claims accrued, at the latest, on March 11, 2014, meaning that they accrued more than six years prior to the date of Globe's claim, and are untimely. 41 U.S.C. § 7103(a)(4)(A).

Globe contends that the cases establishing claim accrual "are inapposite because they involve factual backgrounds where constructive change claims are submitted in isolation, and none involve instances in which there was a termination for convenience, termination settlement proposal, or years of ongoing settlement negotiations, as under our facts" (app. resp. at 10). We disagree. As noted above, this appeal involves only Globe's constructive change claim. As the Federal Circuit noted in *Electric Boat*, "[w]hether and when a claim has accrued is determined according to the Federal Acquisition Regulation (FAR), the language of the contract, and the facts of the particular case." *Electric Boat Corp. v. Navy*, 958 F.3d 1372, 1375 (Fed. Cir. 2020). The fact that Globe was simultaneously negotiating a termination settlement proposal did not toll the statute of limitations for its constructive change claim.

We cite the March 11, 2014 date for simplicity; however most, if not all, of Globe's constructive change claims accrued much earlier. For example, Globe's constructive change pertaining to gross vehicle weight likely accrued when the

---

[3] As we held in our prior decision, to the extent that Globe included a dollar amount in its TSP II, it was a proposal for settlement purposes and not a sum certain for a claim. *Globe Trailer*, 21-1 BCA ¶ 37,795 at 183,499.

8

contracting officer refused Globe's requested modification in September 2012 (R4, tab 16 at G-585) and its constructive change for the provision of an additional test trailer likely accrued with the government's request in May 2012 that Globe provide an additional trailer (R4, tab 10). Globe was aware of the deck extensions outside the payload area starting with communications in February 2013 (R4, tab 21) and continuing through January 2014 (R4, tab 38). Globe's allegations regarding defective electrical connections were known to Globe when it submitted a FACAR in May of 2013 (R4, tab 28) and when the government rejected Globe's proposed solution in September 2013 (R4, tab 31). Globe was aware of the trailer shackle issue and discussed the issue in a May 2013 FACAR (R4, tab 26 at G-697), and Globe indicated that it had designed the new shackle and tested it that same month (*id.* at G-697-98). Globe's quality assurance plan that was allegedly beyond the contract requirements was submitted to the government in June 2013 (R4, tab 50 at G-1087). The additional test service representatives at the Aberdeen Test Center and the Yuma Test Center were required, and funded, by a contract modification in May 2013 (R4, tab 25). Thus, Globe didn't miss the statute of limitations claim deadline by three months from March 11, 2020 (six years after the termination for convenience) to the June 11, 2020 TSP II Supplement. Instead, each of the alleged constructive changes has a separate claim accrual date, and many of the claims accrued in 2012 and 2013.[4]

Globe asserts that it "was under constant pressure to perform and deliver on schedule under the contract during the latter part of 2013 and into the early months of 2014, and it had no reason at that time to try to gather all of the cost-related data necessary to submit a formal claim (app. resp. at 7). Even if Globe was under pressure to perform, that did not prevent the accrual of Globe's claim.

### III.    *Globe Has Not Established That Equitable Tolling Is Appropriate*

Globe asserts that, even if its claim is barred by the CDA statute of limitations, it is entitled to equitable tolling (app. resp. at 11-14). The CDA's statute of limitations is not jurisdictional, and is subject to equitable tolling. *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1322 (Fed. Cir. 2014). The Board has held that the CDA's six-year statute of limitations "may be equitably tolled when a litigant has (1) been pursuing his rights diligently, and (2) some extraordinary circumstance 'stood in his way and prevented timely filing.'" *The Adamant Grp. for Contracting and Gen. Trading*, ASBCA No. 60316, 16-1 BCA ¶ 36,577 at 178,136 (citing *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016)); *see also Kamaludin Slyman CSC*, ASBCA No. 62006 *et al.*, 21-1 BCA ¶ 37,849 at 183,794. Here, Globe asserts that it had

---

[4] Additionally, we note that some of the alleged constructive changes appear to have been required pursuant to bilateral contract modifications. With the exception of a footnote regarding an element of Globe's weight reduction claim (gov't mot. at 36 n.3) the government has not moved for summary judgment on that basis, and we make no findings on that basis.

been pursuing its rights diligently, citing to its attempt to assert its constructive change claims in its TSP II in June 2017, the fact that the parties jointly requested the Board to allow Globe to submit a revised TSP, and Globe's assertion of the constructive change claims in its complaint in ASBCA No. 60979 in July 2017 (app. resp. at 12-13). However, even if we assume that this was sufficient to satisfy the first element of the test for tolling, it is clear that Globe cannot satisfy the second element, that some extraordinary circumstance prevented Globe from filing its claim. Globe contends that the government employed "misleading tactics" to extend the parties' settlement negotiations beyond expiration of the statute of limitations (*id.* at 13). Globe's allegations fail to establish that it was prevented from filing its claim. "[I]n the absence of trickery, once a claim has accrued and the statute of limitations begins to run, 'subsequent communications between [the contractor] and the government about the claim's merits and magnitude [do] nothing to toll it.'" *Ford Lumber & Bldg. Supply, Inc.*, ASBCA No. 61617 *et al.*, 19-1 BCA ¶ 37,407 at 181,847 (quoting *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,018). Globe's allegations of "misleading tactics" pertain to the government's actions in continuing to negotiate with Globe; however, Globe does not assert that the government made false statements or engaged in "trickery" (app. resp. at 13). Simply put, Globe has not asserted facts sufficient to establish that an extraordinary circumstance prevented it from filing its claim. *Kamaludin Slyman*, 21-1 BCA ¶ 37,849 at 183,795.

Globe additionally alleges that equitable tolling is appropriate because it submitted a defective pleading during the statutory period (app. resp. at 11-13 (citing *Lodge Const., Inc. v. United States*, 153 Fed. Cl. 430, 438 (2021)). In *Lodge Construction*, the Court of Federal Claims applied a three element tolling test that provides that tolling is appropriate when one of three circumstances exists: "(1) a defective pleading was filed during the statutory period; (2) [the claimant] was induced or tricked by [the other party's] misconduct into allowing the filing deadline to pass; or (3) [the claimant's] injury was inherently unknowable." *Id.* (quoting *Crawley v. United States*, 145 Fed. Cl. 446, 452 (2019)). Decisions of the Court of Federal Claims are not binding on the Board, and we hold that a defective filing does not provide a basis for equitable tolling. In *Lodge Construction*, the court cites *Crawley* for the standard for equitable tolling. However, *Crawley* was a suit pursuant to the Fair Labor Standards Act (FLSA) and not a CDA case. The Court of Federal Claims' test for tolling in FLSA cases originated in the Supreme Court's holding in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 90 (1990). However, in *Menominee Indian Tribe v. United States*, 577 U.S. 250, 256, the Supreme Court expressly adopted the two element test, originating in *Holland v. Florida*, 560 U.S. 631 (2010) in the context of a suit applying the CDA. In addition, we note the FLSA is an entirely different statutory scheme with a shorter statute of limitation and jurisdiction in Federal District Courts as well as the Court of Federal Claims. Federal courts have the ability to transfer incorrectly filed cases to courts of proper jurisdiction. 28 U.S.C. § 1631. There is no statutory corollary in the CDA, which requires a contractor to submit a claim to a contracting officer.

10

*IV.    The Fact That Discovery Is Not Complete, Without More, Is Not A Valid
        Basis To Suspend Entry Of Summary Judgment*

Globe's final argument is that the Board should deny the government's motion as premature, and allow the parties additional time to develop the record (app. resp. at 14). We recently addressed the legal standard pursuant to Fed. R. Civ. P. 56(d) for a non-moving party seeking to oppose summary judgment because it requires additional discovery. *Odyssey Int'l, Inc.*, ASBCA Nos. 62062, 62279, 21-1 BCA ¶ 37,902 at 184,070.  The non-moving party cannot simply assert that discovery is incomplete, but must establish by affidavit or declaration the reason or reasons why it is unable to file an affidavit presenting the facts necessary to oppose the motion. *Id.*  In addition, the motion must identify the facts not available, the steps the party has taken to obtain these facts, and must show how additional time will allow the party to rebut the pending motion (*id*).

Even ignoring Globe's failure to support its request with a declaration, at best Globe argues that it needs further discovery regarding the parties' settlement negotiations (app. resp. at 14).  As detailed above, the settlement negotiations are not relevant to determining when Globe's constructive change claim accrued, and are not relevant to Globe's equitable tolling argument.  Accordingly, we find no basis to delay entry of summary judgment in favor of the government.

## CONCLUSION

For the reasons stated above, Globe's appeal, ASBCA No. 62594 is denied.

Dated:  November 16, 2021

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

11

I concur                                    I concur


RICHARD SHACKLEFORD                         OWEN C. WILSON
Administrative Judge                        Administrative Judge
Acting Chairman                             Vice Chairman
Armed Services Board                        Armed Services Board
of Contract Appeals                         of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62594, Appeal of Globe Trailer Manufacturing, Inc., rendered in conformance with the Board's Charter.

Dated: November 16, 2021


PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

12